2003-NMCA-129

79 P.3d 1111

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Manuel CONTRERAS, Defendant–Appellee.**

No. 23,394.

Court of Appeals of New Mexico.

Sept. 12, 2003.

Certiorari Denied, No. 28,301, Nov. 3, 2003.

**504**

Patricia A. Madrid, Attorney General, Santa Fe, NM, Joel Jacobsen, Assistant Attorney General, Albuquerque, NM, for Appellant.

John B. Bigelow, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

*OPINION*

PICKARD, Judge.

{1} The State appeals the trial court's order suppressing evidence obtained following a traffic stop of Defendant. The stop was initiated pursuant to an anonymous tip from a concerned motorist who observed erratic driving. We discuss whether an anonymous tip can provide sufficient information for a police officer to form a reasonable suspicion in order to make a brief investigatory stop to confirm or dispel a suspicion of drunk driving. We hold that, under the facts of this case, the deputy responding to the dispatch had reasonable suspicion to make the stop. We reverse the trial court's order suppressing the evidence.

**FACTS**

{2} Pursuant to an anonymous call, police stopped and subsequently arrested Defendant, charging him with aggravated DWI. The caller, described as a concerned motorist who called 911, informed the Mesilla Valley Regional Dispatch Authority of a possible drunk driver who was driving a grey van, towing a red Geo, and driving erratically. Dispatch passed this information to two deputies on patrol, who found the vehicle and initiated a traffic stop. Neither deputy observed erratic driving before Deputy Reyes stopped the vehicle. After stopping Defendant, Deputy Reyes noted signs of alcohol intoxication, including bloodshot, watery eyes and an odor of alcohol on Defendant's breath. Defendant failed standardized field sobriety tests and was taken to the Doña Ana County Sheriff's Office for a breath test, which Defendant refused to take, leading to the aggravated DWI charge.

{3} Defendant moved to suppress all evidence obtained from this stop, arguing that

the traffic stop constituted an illegal seizure, violative of the Fourth Amendment to the United States Constitution, because the deputies observed no suspicious or criminal behavior prior to the stop. The trial court denied the motion, citing as authority *State ex rel. Taxation and Revenue Department Motor Vehicle Division v. Van Ruiten*, 107 N.M. 536, 760 P.2d 1302 (Ct.App.1988). Defendant again moved to suppress the evidence, submitting new case law to the trial court and arguing that the United States Supreme Court's recent decision in *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), controlled in this case. The trial court then granted Defendant's motion to suppress, reasoning that, according to the standard articulated in *J.L.*, the anonymous tip "provided no predictive information with which the officer could test knowledge or credibility." The State appeals from this order.

**STANDARD OF REVIEW**

{4} On appeal from a trial court's ruling on a motion to suppress, we determine whether the law was correctly applied to the facts. *State v. Cline*, 1998–NMCA–154, ¶ 6, 126 N.M. 77, 966 P.2d 785. Such a mixed question of law and facts is reviewed de novo. *State v. Attaway*, 117 N.M. 141, 145–46, 870 P.2d 103, 107–08 (1994). Because the facts in this case are not in dispute, we review only the legal conclusions of the trial court.

**DISCUSSION**

■■■ {5} A brief detention for investigatory purposes is a seizure entitled to Fourth Amendment protections. *Brown v. Tex.*, 443 U.S. 47, 50, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). The Fourth Amendment requires that all seizures be reasonable. *Id.* "A police officer may, in appropriate circumstances approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Van Ruiten*, 107 N.M. at 538, 760 P.2d at 1304; *see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officer, looking at the totality of the circumstances, must be able to form a reasonable suspicion that the individual in question is engaged in or is about to be engaged in criminal activity. *State v. Urioste*, 2002–NMSC–023, ¶ 10, 132

N.M. 592, 52 P.3d 964. "Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *State v. Flores*, 1996–NMCA–059, ¶ 7, 122 N.M. 84, 920 P.2d 1038. Reasonable suspicion is dependant on both the content of information possessed by the police and its degree of reliability. *Ala. v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). An anonymous tip, seldom reliable on its own, must be suitably corroborated or exhibit sufficient indicia of reliability to provide the police reasonable suspicion to make an investigatory stop. *J.L.*, 529 U.S. at 270, 120 S.Ct. 1375; *see Urioste*, 2002–NMSC–023, ¶¶ 11–13, 132 N.M. 592, 52 P.3d 964 (discussing *White* and *J.L.* as containing the standards used to determine whether an anonymous tip can provide reasonable suspicion for an investigative stop). Because the facts surrounding the anonymous tip and investigatory stop are viewed in light of the totality of the circumstances, a deficiency in one consideration can be compensated for by the strength in another consideration or by some indicia of reliability. *See United States v. Arvizu*, 534 U.S. 266, 273–74, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (cautioning appellate courts from considering factors in isolation of each other when using a totality of the circumstances approach in analyzing reasonable suspicion); *White*, 496 U.S. at 330–31, 110 S.Ct. 2412 (affirming that the totality of circumstances approach in determining reasonableness means giving the facts the weight they deserve).

{6} Defendant argued below that his motion to suppress was governed by *J.L.* because Deputy Reyes was acting on an anonymous tip that was completely uncorroborated by the police. *J.L.* concerned an anonymous tip about a young man carrying a concealed weapon. 529 U.S. at 268, 120 S.Ct. 1375. The Supreme Court made it clear that, under the facts of that case, an anonymous tip must have some predictive information with which the police can verify the informant's knowledge or credibility. *Id.* at 271, 120 S.Ct. 1375. In *J.L.* the Supreme Court held that information about the Defendant's race and clothing, combined with his location (standing

at a bus stop), did not give any indication of how the tipster knew of concealed criminal activity. *Id.* at 272, 120 S.Ct. 1375. However, the Supreme Court acknowledged that there may be circumstances in which the danger alleged in an anonymous tip might be so great as to justify a search without a specific showing of reliability:

> We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk. Nor do we hold that public safety officials in quarters where the reasonable expectation of Fourth Amendment privacy is diminished ... cannot conduct protective searches on the basis of information insufficient to justify searches elsewhere.

*Id.* at 273–74, 120 S.Ct. 1375 (internal citations omitted). We note, too, that exigency is the underlying reason that the Supreme Court approved of limited investigatory stops based on reasonable suspicion in *Terry. See United States v. Hensley,* 469 U.S. 221, 228–29, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (discussing the propriety of an investigative stop after a crime has been completed and noting that exigent circumstances, such as were the case in *Terry,* are more persuasive when the police step in *before* a crime is committed or completed).

{7} In the case at bar, we must determine if the anonymous tip, received by the Mesilla Valley Regional Dispatch Authority and passed on to the deputies, contained sufficient information and was sufficiently reliable to provide the deputies with reasonable suspicion that a crime was being or was about to be committed, or if the possible danger to public safety was sufficient for the deputies to conduct the investigatory stop. We analyze each criterion separately, but reach our conclusion based on the totality of circumstances, recognizing that, under a totality of circumstances analysis, no one criterion is dispositive of the ultimate conclusion. *See White,* 496 U.S. at 330, 110 S.Ct. 2412 (stating that the totality of circumstances is "the whole picture," requiring that all factors must be taken into account when evaluating whether there is reasonable suspicion).

{8} The gist of the State's argument is that New Mexico law presumes that concerned citizen-informants are reliable, that public safety concerns can constitute reasonable suspicion, and that traffic stops are the least intrusive form of seizures, tipping the balance between public safety and private intrusion in favor of the stop. Defendant argues that the anonymous tip was not reliable and not corroborated by the deputies, making the stop unreasonable and violative of the Fourth Amendment.

**The Tip Contained Sufficient Information to Identify the Suspect Vehicle**

■ {9} Though the record contains few facts, Deputy Reyes received information "a grey van towing a red Geo" that was sufficient for him to easily find the vehicle that was the subject of the dispatch. Defendant makes no argument that too much time had elapsed between the dispatch and the stop or that the deputies did not receive sufficient information as to the vehicle's location in order to quickly and easily find the vehicle and make the stop to investigate. Similarly, Defendant does not argue that the vehicle's description was too general. This was, after all, a tip about a grey van towing a red Geo, not a tip about a beige Toyota or a dark-colored pickup truck. Several jurisdictions have held, in the context of a totality of the circumstances analysis, that law enforcement officers can make an investigatory stop of a vehicle based on a contemporaneous tip of erratic driving that accurately describes a given vehicle, even if the officers did not witness the erratic driving. Although these cases were decided prior to the Supreme Court's decision in *J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254, they are nevertheless instructive in light of the post-*J.L.* cases on which we rely below. *See State v. Markus,* 478 N.W.2d 405, 408 (Iowa Ct.App. 1991) (determining that it is sufficient that police only corroborate the innocent facts of the description of the vehicle obtained from anonymous caller); *State v. Slater,* 267 Kan. 694, 986 P.2d 1038, 1044 (1999) ("An officer may corroborate the tip by observing illegal activity or by finding the person and vehicle and the location as substantially described by

7

the informant."); *State v. Sampson*, 669 A.2d 1326, 1328 (Me.1996) (determining that description of the vehicle, its location, and license plate were sufficient information to make a stop); *State v. Melanson*, 140 N.H. 199, 665 A.2d 338, 340 (1995) (determining that the anonymous caller sufficiently described the car, its location, and its direction of travel for the officer to find it); *People v. Rance*, 227 A.D.2d 936, 644 N.Y.S.2d 447, 447 (1996) (determining that description and license plate of the vehicle is sufficient for a stop because New York law allows police to act on an anonymous source if it is a matter gravely affecting personal or public safety); *State v. Lownes*, 499 N.W.2d 896, 900 (S.D. 1993) (determining that caller's knowledge of driver's name, description of the motorcycle, and the route and direction it was going were sufficient for police to find and stop). *But see State v. Miller*, 510 N.W.2d 638, 644–45 (N.D.1994) (holding that corroboration of innocent information does not increase the reliability of the tip); *McChesney v. State*, 988 P.2d 1071, 1078 (Wyo.1999) (holding that a description and location of a vehicle received from an anonymous tip not sufficient to justify a traffic stop absent independent police observation of erratic driving or illegal behavior). Though the facts here are few, they were sufficient for the deputies to identify the correct vehicle and make the stop.

### The Tip Was Sufficiently Reliable Under the Circumstances

{10} The caller here is identified only as a "concerned motorist," making him or her truly anonymous. In New Mexico, a citizen-informant is regarded as more reliable than a police informant or a crimestoppers informant. *See State v. Michael G.*, 106 N.M. 644, 647, 748 P.2d 17, 20 (Ct.App. 1987) ("Statements by eyewitness citizen-informants are subject to much less stringent credibility verification requirements than ordinary police informants' statements because citizens presumably have nothing to gain by fabrication."). Prior to *J.L.*, 529 U.S. 266, 120 S.Ct. 1375, this Court affirmed a presumption of reliability in the context of a vehicle stop made pursuant to an anonymous call describing an intoxicated driver. *See Van Ruiten*, 107 N.M. at 539, 760 P.2d at 1305. In *Van Ruiten*, the anonymous caller described his personal observation of an intoxicated man whom he had seen in a convenience store and his observation of that man driving out of the store's parking lot. *Id.* at 538, 760 P.2d at 1304. We held that the anonymous citizen's eyewitness account of the intoxicated man, combined with his description and last-seen location of the vehicle, provided sufficient information to form a reasonable suspicion that the defendant was driving while intoxicated. *Id.* at 539, 760 P.2d at 1305.

{11} Many other jurisdictions were in accord with New Mexico's pre-*J.L.* presumption that a citizen-informant is inherently reliable. *See, e.g., People v. Willard*, 183 Cal.App.3d Supp. 5, 228 Cal.Rptr. 895, 896 (1986) (stating that police officers presume citizen-informants are reliable because there is no reason to think otherwise); *State v. Evans*, 692 So.2d 216, 219 (Fla.Dist.Ct.App. 1997) (stating that Florida courts presume that citizen-informants are reliable because they have nothing to gain by giving the information to authorities); *Markus*, 478 N.W.2d at 408–09 (presuming that citizen-informants are more likely to be reliable); *Lownes*, 499 N.W.2d at 899 (same); *State v. Sailo*, 910 S.W.2d 184, 188–89 (Tex.Ct.App. 1995) (acknowledging that citizen-informants who are witness to a crime are presumed reliable). *But see Stewart v. State*, 22 S.W.3d 646, 649–50 (Tex.Ct.App.2000) (ruling that citizen informants, unless they put themselves into a position of being identified, are not entitled to any special reliability presumptions).

{12} Courts acknowledge that a tip is more reliable if it is apparent that the informant observed the details personally. *See Illinois v. Gates*, 462 U.S. 213, 234, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (stating that if an event is observed first-hand, the tip is entitled to greater weight than might otherwise be the case). Here, the caller was a motorist who described a specific vehicle and its "erratic driving," indicating that the caller was an eyewitness, and lending credibility to the anonymous claim. *See, e.g., Slater*, 986 P.2d at 1046 (stating that detailed information raises an inference that the informant

observed the defendant personally); *Melanson,* 665 A.2d at 340 (noting that a specific description of the car, its location, direction, and prior movements reasonably support a conclusion that caller had personally observed the vehicle); *State v. Rutzinski,* 241 Wis.2d 729, 623 N.W.2d 516, 526 (2001) (determining that personal observations of driver's contemporaneous actions led to inference that the informant had a reliable basis of knowledge). Thus, even though the caller was anonymous, there was no reason for Deputy Reyes to presume that the informant was not reliable or that the description given was not credible. The fact that the caller was a concerned citizen reporting his or her eyewitness account of erratic and possibly drunk driving is a factor that Deputy Reyes could consider in evaluating the totality of the circumstances.

**The Possible Danger to the Public Presents an Exigent Circumstance That Tips the Balance in Favor of the Stop**

{13} "The reasonableness of seizures that are less intrusive than a traditional arrest depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Brown,* 443 U.S. at 50, 99 S.Ct. 2637 (internal citations and quotation marks omitted). The Supreme Court has articulated a balancing test we must use to determine the reasonableness of the seizure. *See id.* at 50–51, 99 S.Ct. 2637. We must weigh the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. *Id. Cf. State v. Porras–Fuerte,* 119 N.M. 180, 184, 889 P.2d 215, 219 (Ct.App. 1994) ("The reasonableness of the detention rests on balancing the nature and quality of the intrusion against the importance of governmental interests."). Thus, in determining whether the totality of circumstances gave Deputy Reyes a reasonable suspicion to stop Defendant, we must balance the possible threat of drunk driving to the safety of the public with Defendant's right to be free from unreasonable seizure.

{14} "New Mexico has a serious problem with drunk drivers, with one of the highest rates in the nation of DWI-related fatalities." *State ex rel. Schwartz v. Kennedy,* 120 N.M. 619, 624, 904 P.2d 1044, 1049 (1995). "Our citizens are obviously concerned by this dangerous situation[.]" *Id.* "In New Mexico, the elimination of driving while intoxicated and its related offenses is a matter of grave concern to society in general, and to our courts and Legislature in particular." *City of Albuquerque v. One (1) 1984 White Chevy UT,* 2002–NMSC–014, ¶ 18, 132 N.M. 187, 46 P.3d 94. It is recognized that there are substantial problems in communities caused by those who drive under the influence of liquor or drugs, creating the potential for serious injury and loss of life to innocent citizens. *Id.* ¶ 6. New Mexico's elected representatives have enacted a system of laws providing for punishment for drunk drivers as well as remedial measures for the protection of the population. *Kennedy,* 120 N.M. at 624, 904 P.2d at 1049. We think it is beyond dispute that the first two prongs of the *Brown* analysis, the gravity of the public concern and the public interest served by the seizure, weigh heavily in the balancing test. *See State v. Lamb,* 168 Vt. 194, 720 A.2d 1101, 1104 (1998) (stating that the level of danger that a tip reveals is a "critical factor" in determining the reasonableness of a police response).

{15} Moreover, a moving car on a public roadway presents an exigent circumstance that a possessory crime does not. *See Slater,* 986 P.2d at 1046 ("A motor vehicle in the hands of a drunken driver is an instrument of death. It is deadly, it threatens the safety of the public, and that threat must be eliminated as quickly as possible." (internal quotation marks and citation omitted)); *see also United States v. Wheat,* 278 F.3d 722, 736 (8th Cir.2001) (stating that the critical distinction between gun possession cases and potential drunk driving cases is that, in the latter case, an officer cannot initiate a consensual encounter and cannot observe a suspect for a considerable length of time because an erratic and possible drunk driver poses an imminent threat to public safety); *State v. Walshire,* 634 N.W.2d 625, 629–30 (Iowa 2001) (determining that alleged drunk

driving presents a serious public hazard that possession of a gun does not); *State v. Boyea*, 171 Vt. 401, 765 A.2d 862, 867 (2000) (noting the contrast between a report of an individual in possession of a gun, and the report of an erratic or drunk driver, which presents a "qualitatively different level of danger" and a great urgency for prompt response); *Rutzinski*, 623 N.W.2d at 526 (determining that, unlike a tip of an individual possessing a firearm, a tip suggesting that a driver is drunk presents an imminent threat to the safety of the public). Indeed, it is the imminent threat to public safety that distinguishes these cases from *J.L.*, as the Court of Appeals for the Eighth Circuit and the Supreme Courts of Iowa, Vermont, and Wisconsin, cited above, determined. A police officer's ability to observe incriminating behavior before making an investigatory stop is limited by the exigency of the situation, lest the officer expose the suspect and the public to the danger of a drunk driver.

{16} Conversely, a brief investigatory stop of a motor vehicle is substantially less intrusive than other forms of seizures under the Fourth Amendment, and it is less intrusive than the pat-down search at issue in *J.L.* See *Wheat*, 278 F.3d at 737 ("[W]e think that such stops are considerably less invasive, both physically and psychologically, than the frisk on a public corner that was at issue in *J.L.*"); *Slater*, 986 P.2d at 1046 (stating that brief investigatory stops of motor vehicles are perceived as relatively minimal intrusions upon Fourth Amendment freedoms).

{17} The cases decided after the Supreme Court's decision in *J.L.*, cited above, have facts that are very similar to the case at bar. The *Wheat* court upheld the constitutionality of a traffic stop based on an anonymous caller's description of a vehicle that, based on the caller's contemporaneous eyewitness observations, the caller believed was being operated dangerously, citing specific examples of moving violations. 278 F.3d at 737. The police officer found the vehicle, thus confirming the caller's description, and initiated an immediate investigatory stop in order to prevent any further potential danger to the public. *Id.* The court held that, under

the totality of the circumstances, the initial investigatory stop was not unreasonable. *Id.*

{18} The *Walshire* court upheld the constitutionality of a traffic stop based on an anonymous caller's description of a vehicle and the caller's contemporaneous observation of a possible drunk driver driving in the median. 634 N.W.2d at 625–26. The court held that the serious public hazard called for a relaxed threshold of reliability of the tip and that the intrusion on the defendant's privacy interests was slight. *Id.* at 630.

{19} The *Boyea* court upheld the constitutionality of a traffic stop based on an anonymous tip that described the vehicle and reported that it was "operating erratically." 765 A.2d at 863 (internal quotation marks omitted). The court determined that the description of the vehicle was sufficient for the police officer to promptly find it and confirm the accuracy of the description, that the information of erratic driving supported a reasonable inference that the driver might be intoxicated, and that the serious threat posed by a possible drunk driver outweighed the "relatively minimal intrusion" of the brief investigative stop. *Id.* at 868.

{20} The facts in *Rutzinski* are stronger, in that the court determined that the anonymous caller "exposed him- or herself to being identified" because the informant stated that he or she was in a particular vehicle. 623 N.W.2d at 525. Nevertheless, the caller remained anonymous, provided the police with a verifiable description of the vehicle, and provided contemporaneous observations of speeding, slowing, and tailgating. *Id.* at 519, 526. The court determined that the imminent threat to the public's safety, combined with the allegations in the informant's tip, provided sufficient justification for the investigative stop. *Id.* at 527–28.

### The Investigatory Stop Was Reasonable

{21} We determine that, under the totality of circumstances, Deputy Reyes' stop of Defendant's vehicle was reasonable. The facts of the case allow the inference that the anonymous caller was a reliable concerned motorist; the information given was detailed enough for the deputies to find the vehicle in question and confirm the description; and

the caller was an apparent eyewitness to the erratic driving. Furthermore, the exigency of the possible threat to public safety that a drunk driver poses, New Mexico's grave concern about the dangers of drunk drivers, and the minimal intrusion of a brief investigatory stop tip the balance in favor of the stop. We emphasize that our decision does not do away with the anonymous tip analysis of credibility and reliability that the Fourth Amendment requires, the factual bases of which must be determined in each individual case. Indeed, we encourage dispatch operators and police officers to record the names of concerned callers and to obtain as many facts as possible to determine the credibility and reliability of each caller. We hold only that, on the facts of this case, and considering the totality of the circumstances, Deputy Reyes had a reasonable suspicion sufficient to make a brief, investigatory stop of Defendant's vehicle.

**CONCLUSION**

{22} We reverse the order of the trial court suppressing the evidence and remand for further proceedings.

{23} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CYNTHIA A. FRY, Judges.