This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                 **NO. 29,327**

**LAUREN ASHLEY LUNDERVILLE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Stephen Bridgforth, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Chief Judge.**

Defendant pleaded no contest to driving under the influence of alcohol (DWI) (first offense), reserving the right to appeal the district court's denial of her motion to

suppress evidence. *See* NMSA 1978, § 66-8-102(C) (2007) (amended 2008 and 2010). On appeal, Defendant argues that officers were not justified in initially detaining her and, in addition, they were not justified in expanding the scope of the investigation to ask her to perform field sobriety tests (FSTs). We hold that the officers were justified in detaining Defendant to investigate whether she was intoxicated. Furthermore, given that Officer Juan Gomez smelled alcohol while the investigation was ongoing, he was authorized to request that Defendant perform FSTs. We therefore affirm the order denying Defendant's motion to suppress and affirm her conviction.

**BACKGROUND**

This case originally came before the district court as a bench trial, but Defendant orally moved to suppress the evidence after Officer Ramon Rivera testified. The parties agreed that the bench trial would be treated as a suppression hearing.

Officer Rivera testified as follows. He received a dispatch call that a Taco Bell employee had called about a possible drunk driver seen going through the drive-through. The employee stated that the car was driven by a female and was now parked in the Taco Bell parking lot. Officer Rivera could not recall if the employee described the vehicle. Officer Rivera and Sergeant Justin Dunivan responded to the dispatch and approached the only vehicle in the parking lot, a silver Pontiac belonging

to Defendant. Officer Rivera explained to Defendant that he had received a call that she might be intoxicated and asked her if she had anything to drink; she said she had not. Officer Rivera testified that he did not smell alcohol or otherwise observe signs of intoxication. He asked Defendant to submit to FSTs, and she consented. He also asked for Defendant's driver's license and registration information which he took back to his police vehicle.

Sergeant Dunivan arrived at approximately the same time as Officer Rivera and within one to two minutes of the dispatch call. He testified that dispatch described the vehicle as a green passenger vehicle with two female occupants. He stated that when he arrived at the Taco Bell, he noticed that the only car in the lot was a Pontiac Vibe, which was gray or possibly greenish in color, depending on the lighting. Sergeant Dunivan testified that he approached the passenger side of the vehicle and did not notice the smell of alcohol.

Officer Gomez, the DWI officer, also responded to the dispatch and arrived approximately five minutes after Officer Rivera and Sergeant Dunivan while Officer Rivera was in his squad car with Defendant's identification. Officer Rivera told Officer Gomez that he could not smell alcohol, but Defendant's vehicle was the car referred to in the dispatch call. Officer Gomez testified that as he approached Defendant's vehicle, he detected a slight odor of alcohol which was partially covered

3

by the smell of Taco Bell food. He asked Defendant if she had been drinking, and she said she had not. Officer Gomez asked Defendant to submit to FSTs, and she agreed. Defendant failed the FSTs. She then submitted to a breath alcohol test that resulted in readings of .12 and .13.

Defendant sought to suppress the evidence, contending that Officer Rivera lacked reasonable suspicion to request that she perform FSTs and to continue to detain her. The district court denied the motion to suppress because Officer Gomez detected a slight odor of alcohol before making Defendant exit the vehicle to perform FSTs. Defendant then entered a conditional no-contest plea reserving her right to appeal the denial of the motion to suppress.

**STANDARD OF REVIEW**

In reviewing the district court's denial of a motion to suppress, we determine "whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). We defer to the district court's findings of fact to the extent that they are supported by substantial evidence. *Id.* However, we "review the application of the law to these facts, including determinations of reasonable suspicion, under a de novo standard of review." *State v. Patterson*, 2006-NMCA-037, ¶ 13, 139 N.M. 322, 131 P.3d 1286.

4



**DISCUSSION**

When an officer stops an automobile to investigate a possible crime, we analyze the reasonableness of the stop and ensuing investigatory detention in accordance with the two-part test in *Terry v. Ohio*, 392 U.S. 1 (1968). *State v. Duran*, 2005-NMSC-034, ¶ 23, 138 N.M. 414, 120 P.3d 836. We ask whether the stop was justified at its inception and whether the officer's actions during the stop were reasonably related to circumstances that justified the stop. *Id.* In order for the stop to be justified at its inception based upon a tip, we consider the totality of the circumstances to determine whether the tip was sufficiently reliable to provide police with reasonable suspicion that a crime was being or about to be committed, or whether the tip was sufficient to indicate the possibility of danger to the public thus justifying an investigatory stop. *State v. Contreras*, 2003-NMCA-129, ¶ 7, 134 N.M. 503, 79 P.3d 1111. "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *Jason L.*, 2000-NMSC-018, ¶ 20. Reasonable suspicion must exist at the beginning of the stop and cannot be based on facts that arise as a result of the encounter. *Id.*

In determining whether the officers' actions during the stop were reasonably related to circumstances that justified the stop, the second part of the *Terry* test, we

6

note that "investigation beyond the scope of the initial traffic stop is justified only if the officer can articulate specific and particularized factors that give rise to an objectively reasonable suspicion that other criminal activity has been or may be afoot." *State v. Prince*, 2004-NMCA-127, ¶ 9, 136 N.M. 521, 101 P.3d 332. In determining whether an officer had reasonable suspicion of other criminal activity, we "must necessarily take into account the evolving circumstances with which the officer [was] faced." *Duran*, 2005-NMSC-034, ¶ 36 (internal quotation marks and citation omitted).

**Defendant Was Detained or "Seized" When Officer Rivera Asked for Her Identification**

Defendant devotes a significant portion of her brief in chief to her contention that she was seized when officers approached her vehicle and began investigating her for possible DWI because she was not free to leave. The State does not dispute that Defendant was seized, at least at the point when Officer Rivera requested Defendant's identification. *See State v. Taylor*, 1999-NMCA-022, ¶ 15, 126 N.M. 569, 973 P.2d 246 (filed 1998) (recognizing that a driver is not free to leave while officers are in possession of his driver's license and registration materials and is seized during the time in which the officer retains his license). Therefore, we proceed to consider whether the officers had reasonable suspicion to detain Defendant by asking her for her registration and license and whether they had reasonable suspicion to request that

7

she perform FSTs. *Cf. State v. Rubio*, 2006-NMCA-067, ¶ 11, 139 N.M. 612, 136 P.3d 1022 (stating that traffic stops are not consensual encounters, but seizures of the vehicle and its occupants and are therefore analyzed to determine "whether the officer made a valid investigatory stop; and . . . whether the officer's actions during the investigatory detention were reasonably related in scope to the circumstances that initially justified the stop"); *State v. Affsprung*, 2004-NMCA-038, ¶¶ 16-19, 135 N.M. 306, 87 P.3d 1088 (rejecting the notion that a passenger would feel free to leave during a routine traffic stop, particularly after being asked for identification and therefore holding that the request for the passenger's identification is an investigatory detention and must be supported by reasonable suspicion of criminal activity).

**Preservation**

Defendant contends that the officers lacked reasonable suspicion to detain her or to ask her to perform FSTs. The State asserts that this issue was not preserved because Defendant only argued that the stop was not supported by probable cause, not that the officers lacked reasonable suspicion. It notes that probable cause is necessary to justify a warrantless arrest while reasonable suspicion justifies an investigatory detention. *See Jason L.*, 2000-NMSC-018, ¶ 14 ("An arrest must be supported by probable cause and an investigatory stop must be supported by reasonable suspicion.").

Our review of the transcript from the suppression hearing makes it clear that Defendant's counsel specifically corrected her misuse of the phrase "probable cause" during the hearing and substituted "reasonable suspicion." Moreover, in claiming that her continued detention after Officer Rivera failed to detect any odor of alcohol was illegal, Defendant cited case law standing for the proposition that the officers needed reasonable suspicion before requiring her to submit to FSTs, and the State directed its arguments to refuting that contention. *See generally Contreras*, 2003-NMCA-129, ¶¶ 8-21 (considering whether officers were justified in detaining the defendant to investigate a possible DWI offense based upon an anonymous tip); *State v. Williamson*, 2000-NMCA-068, ¶¶ 5-16, 129 N.M. 387, 9 P.3d 70 (considering whether the officers had reasonable suspicion to continue to detain the defendant after administering an HGN test). The district court also noted that although Defendant said "probable cause," she meant "reasonable suspicion." Therefore, despite the erroneous use of "probable cause," Defendant sufficiently alerted the district court to the substance of her argument that officers lacked reasonable suspicion to detain her or to request that she submit to FSTs. *See State v. Jernigan*, 2006-NMSC-003, ¶ 10, 139 N.M. 1, 127 P.3d 537 (stating that the purpose of the preservation requirement is "to alert the trial court to the defendant's argument").

**Propriety of the Initial Detention**

We note that Defendant's arguments to the district court do not clearly indicate whether she is protesting the propriety of the initial detention as opposed to only arguing that officers should have ceased the investigation once Officer Rivera failed to detect any odor of alcohol or other indicia of intoxication. Nonetheless, we proceed to analyze whether the officers were justified in detaining Defendant because for the reasons that follow, the existence of reasonable suspicion at the initial detention justified the subsequent investigation. Thus, we first consider whether Officer Rivera and Sergeant Dunivan were justified in approaching Defendant's vehicle and temporarily detaining her based on the tip provided by the Taco Bell employee.

The employee told dispatch that he observed an impaired driver in a car containing two females who were parked and eating after going through the drive through. Officers arrived only one to two minutes later, and Defendant's car, containing two female passengers who were eating, was the only vehicle in the lot. The car described in the dispatch was green while Defendant's car was silver, but there was testimony that Defendant's car appeared greenish, given the light in the parking lot.

Based upon the information provided in the tip, the degree to which Defendant's car appeared to match that information, the fact that officers arrived

10

within minutes of receiving the tip, and the fact that Defendant's car was the only vehicle in the lot, the officers could reasonably conclude that Defendant's vehicle was the car referenced in the employee's tip. Therefore, they had reasonable suspicion to detain Defendant to investigate whether she had been drinking. *See Contreras*, 2003-NMCA-129, ¶ 21 (holding that the testimony was sufficient to establish reasonable suspicion because information was provided by an anonymous caller who "was a reliable concerned motorist; the information given was detailed enough for the deputies to find the vehicle in question and confirm the description; and the caller was an apparent eyewitness to the erratic driving" even though the officers had not witnessed the erratic driving).

Defendant notes that the officers never spoke with the Taco Bell employee before initiating contact with her. She claims that her vehicle's location in the general area where suspected activity had allegedly occurred is not sufficiently specific to provide reasonable suspicion, especially because a drive-through window of a fast food restaurant is not a location where a vehicle is likely to remain for an extended period of time. She therefore concludes that the anonymous tip provided by the Taco Bell employee was not sufficiently reliable or corroborated to provide reasonable suspicion. We disagree.

11

As we previously observed, the Taco Bell employee who provided the tip personally observed the impaired driving. A citizen informant who personally witnesses the apparent crime is considered to be more reliable than other types of informants and thus subject to less stringent verification requirements because such informants have nothing to gain by providing false information. *See id.* ¶ 12 (noting that courts have acknowledged "that a tip is more reliable if it is apparent that the informant observed the details personally"); *Taylor*, 1999-NMCA-022, ¶ 8 (observing that a tip from a "person who purports to be a witness" to a crime "may be presumed reliable" (internal quotation marks and citation omitted)). Moreover, the tip specifically stated that the suspected drunk driver had parked at the Taco Bell, and the officers arrived within minutes of receiving the tip. Therefore, officers could reasonably conclude that the only car in the lot was the vehicle driven by the impaired driver. Finally, given the information provided to the officers and the exigencies presented by the possibility of an impaired driver on the roadway, the officers could reasonably suspect that Defendant was the impaired person who had gone through the drive through and were justified in detaining her to confirm or dispel their suspicions. *See Contreras*, 2003-NMCA-129, ¶ 21 (holding that, under the totality of circumstances, the officer's stop of the defendant's vehicle was reasonable in light of the "exigency of the possible threat to public safety that a drunk driver poses"); *State*

12

*ex rel. Taxation & Revenue Dep't v. Van Ruiten*, 107 N.M. 536, 538-39, 760 P.2d 1302, 1304-05 (Ct. App. 1988) (applying the standard used in criminal cases and concluding that the officer had reasonable suspicion justifying the stop when the dispatcher provided him with information that someone had called and reported seeing a very intoxicated person leaving a store and describing the vehicle and the direction of travel).

**Expansion of the Initial Detention**

Defendant contends that even if officers were justified in initially confronting her, there was no valid basis for expanding the scope of inquiry by asking Defendant to perform the FSTs given that Officer Rivera "confirmed" that Defendant was not the driver identified in the tip. She notes that neither Officer Rivera nor Sergeant Dunivan observed any signs of intoxication, and thus had "dispelled any reasonable suspicion that she was the person complained of [and] Officer Rivera should not have asked her to submit to a FST." We disagree.

It is well-established that once officers legally stop a car, they are entitled to request the driver's license, registration, and proof of insurance as part of the investigation. *See State v. Reynolds*, 119 N.M. 383, 388, 890 P.2d 1315, 1320 (1995) (holding that after a valid investigatory stop, an officer is entitled to verify that the driver is licensed and driving a car that is registered and insured); *see also Taylor*,

1999-NMCA-022, ¶ 14 (holding that an officer making a valid stop is entitled to verify that the driver is licensed and that the car is registered and insured). Thus, Officer Rivera was entitled to request and then verify Defendant's identification as part of his initial investigation. *See id.*; *Reynolds*, 119 N.M. at 388, 890 P.2d at 1320.

While Officer Rivera was continuing his investigation by verifying Defendant's license, Officer Gomez arrived and detected the odor of alcohol. It was only at this point, while Officer Rivera's investigation was continuing and after Officer Gomez detected the odor of alcohol, that the scope of the detention was arguably "expanded" to include the FSTs. *See Williamson*, 2000-NMCA-068, ¶ 9 (noting that the administration of FSTs is a reasonable part of a DWI investigation and that where the first officer stopped the suspect and the second officer arrived shortly after, both officers could continue the investigation to dispel their suspicion that the suspect was impaired). Given that Officer Gomez smelled alcohol, he was entitled to expand the investigation to include administration of the FSTs. *See Prince*, 2004-NMCA-127, ¶ 11 (recognizing that the purpose of an investigative stop can be expanded by specific, articulable facts that cause an officer to reasonably suspect criminal activity).

Defendant cites *Taylor* in support of her contention that the officers were not justified in requesting that she perform FSTs. We are not persuaded. In *Taylor*, the first officer approached the defendant's stopped car on suspicion of littering and

14

larceny. 1999-NMCA-022, ¶ 2-3. After the defendant and his passenger denied littering, the officer asked them for identification and returned to his squad car to perform a wants and warrants check. *Id.* ¶ 3. While the first officer was running the wants and warrants check, the second officer approached the defendant and asked whether he had guns, illegal drugs, or alcohol in his car, and the defendant said that he did not. *Id.* ¶ 4. The officer then asked if he could search the defendant's car for guns, alcohol, or illegal drugs, and the defendant agreed. *Id.* The search revealed cocaine, which the defendant sought to suppress. *Id.* ¶¶ 4-6.

The Court first held that, based upon the informant's tip, the officers had reasonable suspicion to approach and detain the defendant to investigate possible littering. *Id.* ¶¶ 11-12. Furthermore, once the officers stopped the defendant, they were entitled to ask for the defendant's license and registration and to perform a wants and warrants check. *Id.* ¶ 14. This portion of the analysis in *Taylor* supports our conclusion in this case that the officers had reasonable suspicion to initially detain and investigate Defendant for suspected DWI and, as part of that investigation, to request her license and identification and to return to the squad car to confirm the validity of her license. *See id.*

In the second portion of *Taylor*, the Court held that, after investigating the defendant for suspected littering and larceny, the officers had no reason to investigate

15

for drugs and alcohol. *Id.* ¶ 22. While suppressing the evidence of cocaine, the Court also observed that "the subjects of drugs and alcohol could have come within the scope of the officers' investigation if evidence of drugs and alcohol had become apparent during their interactions with [the d]efendant." *Id.* The alternative recognized by the *Taylor* Court in dicta is precisely what happened in this case. *See id.* Unlike in *Taylor*, in this case the subject of alcohol was the purpose of the initial investigation, and alcohol was further implicated during the investigation when Officer Gomez detected the odor of alcohol, thereby justifying Officer Gomez's request that Defendant perform FSTs.

Given that the investigation was ongoing, we are not convinced that the district court erred in finding reasonable suspicion based on Officer Gomez's detection of a slight odor of alcohol even though this was not detected until after Officer Rivera initiated the detention. As previously discussed, the initial detention was justified by the information provided in the Taco Bell employee's tip, and our case law does not require a finding that the initial investigation was complete or that Officer Rivera's initial suspicion of DWI was dispelled merely because he failed to detect an odor of alcohol or other indicia of intoxication. *See State v. Sewell*, 2009-NMSC-033, ¶ 22, 146 N.M. 428, 211 P.3d 885 (citing to numerous cases standing for the proposition that officers need not abruptly discontinue an investigation merely because of initial

16

unsuccessful results), *cert. denied*, 2010-NMCERT-001, 147 N.M. 673, 227 P.3d 1055. Instead, the investigation remained ongoing as Officer Gomez approached Defendant's vehicle and detected the odor of alcohol. *See Taylor*, 1999-NMCA-022, ¶¶ 20-21 (recognizing that an officer may "pursue matters that arise during the course of the stop which cause the officer reasonable suspicion").

In closing, we recognize that an "officer's investigation of any reasonable suspicion must proceed diligently." *Williamson*, 2000-NMCA-068, ¶ 8. Moreover, "[a]n officer's continued detention of an individual, while lawful at the outset, may become unlawful if the officer unjustifiably expands the scope of the detention." *State v. Funderburg*, 2008-NMSC-026, ¶ 14, 144 N.M. 37, 183 P.3d 922. However, our review of the record in this case fails to indicate that Defendant was delayed beyond the time necessary to do a check on her license and registration until Officer Gomez detected the odor of alcohol. At that point, Officer Gomez was justified in administering the FSTs.

**CONCLUSION**

Based upon the foregoing, we affirm the district court's order denying Defendant's motion to suppress and affirm Defendant's conviction.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**LINDA M. VANZI, Judge**

18