**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: July 24, 2014

Docket No. 32,511

STATE OF NEW MEXICO,

       Plaintiff-Appellee,

v.

LEILANI LOPE,

       Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Karen L. Townsend, District Judge

Gary K. King, Attorney General
Yvonne M. Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

**{1}**    This is a driving while intoxicated (DWI) case in which Defendant asserts that her motion to suppress was improperly denied. Following a convoluted history, which we describe in detail below, the case comes before us for the second time more than five and one-half years after the judgment and sentence was filed in the magistrate court where the case originally originated. We address: (1) whether we have jurisdiction over the appeal; (2) whether the appeal is moot; and (3) whether Defendant's motion to suppress was improperly denied. We hold that we have jurisdiction based on the conclusive presumption

1

of ineffectiveness of counsel established in *State v. Duran*, 1986-NMCA-125, ¶¶ 4-6, 105 N.M. 231, 731 P.2d 374 and that the appeal is not moot. On the merits, we affirm the denial of Defendant's motion to suppress.

## I.      JURISDICTION TO HEAR APPEAL

### A.      Facts

**{2}** On March 13, 2008, a criminal complaint was filed in the magistrate court charging Defendant with driving under the influence of intoxicating liquor (second offense), driving with an open container of alcohol, and driving with a suspended license. After Defendant's motion to suppress was denied in the magistrate court, the parties entered into a plea and disposition agreement which was approved by the magistrate court. Pursuant to the agreement, Defendant pled guilty to driving while under the influence (non-aggravated, first offense), the remaining charges were dismissed, and Defendant reserved her right to appeal the order denying her motion to suppress. Defendant was sentenced in the magistrate court on January 15, 2009, and Defendant appealed to the district court.

**{3}** The appeal to the district court was de novo, NMSA 1978, Section 39-3-1 (1955), and on June 16, 2009, an evidentiary hearing was held on the motion to suppress, the only issue raised on appeal. At the conclusion of the hearing, the district court orally denied Defendant's motion to suppress, and the prosecutor was instructed to prepare an order remanding the case to the magistrate court. The order for remand, filed on February 17, 2010, directs that the case "hereby is remanded to [m]agistrate [c]ourt for further proceedings," but fails to state that the motion to suppress was denied.

**{4}** Defendant then appealed from the district court to this Court. In that appeal, we issued an order on April 27, 2010, "requiring Defendant to obtain a final written order, disposing of the motion to suppress, within thirty days." We issued the order because we could not determine whether the appeal was from a final order, in that it was unclear whether the district court order remanded the case to the magistrate court only to enforce the magistrate court judgment or to address other remaining issues. Defense counsel did not obtain a final order disposing of the suppression motion, but simply refiled a copy of the original order of remand. We therefore dismissed the appeal on the basis that there was no final written order before us on appeal, and mandate issued on August 23, 2010.

**{5}** Upon receipt of our mandate, the district court concluded that "Defendant's appeal has reached final disposition" and remanded the case to the magistrate court on August 25, 2010. Because execution of the sentence imposed on January 15, 2009, by the magistrate court was not stayed during the appeal, the district court directed that, to the extent the sentence had not been fully executed, the sentence be executed "with date and time adjustments made as necessary by the Magistrate after hearing." The case lingered in the magistrate court for unexplained reasons from January 26, 2011, when the district court order of remand was filed in the magistrate court, until October 25, 2011, when a new

judgment and sentence was filed in the magistrate court.

**{6}** Upon entry of the judgment and sentence in magistrate court on October 25, 2011, Defendant once again appealed to the district court. The district court recounted the foregoing history and found that Defendant was now seeking to obtain the appellate review that she had failed to previously obtain because she had not secured a final order from the district court as directed in this Court's April 27, 2010 order. The district court concluded that because Defendant "was given ample opportunity to perfect her appeal in the Court of Appeals which she failed to do"; that no procedure under the circumstances allowed a second appeal on precisely the same issue; and that "[i]t is difficult to imagine that attorney neglect could support a second appeal almost two years after the first appeal was dismissed and three years after this Court ruled that . . . Defendant's motion to suppress was denied," the appeal should be dismissed. The district court entered its order dismissing the appeal, and it is from this order that Defendant brings the present appeal before us.

**B.     Analysis**

**{7}** We reject the State's argument that we have no jurisdiction to decide the appeal by applying the conclusive presumption of ineffective assistance of counsel rule adopted in *Duran*, 1986-NMCA-125, ¶¶ 4-6.

**{8}** "The timely filing of a notice of appeal is a mandatory precondition to this Court's exercise of jurisdiction." *State v. Vigil*, 2014-NMCA-__, ¶ 7, __ P.3d __, (No. 32,166, Mar. 12, 2014). In *Duran*, the notice of appeal was filed more than one year late. 1986-NMCA-125, ¶ 1. Nevertheless, we considered the appeal on the merits by adopting a conclusive presumption of ineffective assistance rule. Specifically, where defense counsel fails to timely file a notice of appeal, we conclusively presume that the failure resulted from ineffective assistance of counsel and entertain the appeal. *Id.* ¶¶ 2-6. We recently applied the presumption in *State v. Dorias*, 2014-NMCA-__, ¶ 7, __ P.3d __, (No. 32,235, May 21, 2014), when the defendant's lawyer failed for four years to file a notice of appeal. *See also Vigil*, 2014-NMCA-__, ¶ 16 (applying the *Duran* principle when "an untimely notice of appeal is filed following the district court's on-record review of a metropolitan court decision"); *State v. Leon*, 2013-NMCA-011, ¶ 15, 292 P.3d 493 (extending the *Duran* presumption in situations where counsel fails to timely file a notice of appeal from an order revoking probation), *cert. quashed*, 2013-NMCERT-010, 313 P.3d 251; *State v. Eger*, 2007-NMCA-039, ¶ 5, 141 N.M. 379, 155 P.3d 784 (holding "that the *Duran* presumption of ineffectiveness of counsel extends to [the d]efendant's right to appeal his magistrate court conditional plea agreement to district court"); *State ex rel. Children, Youth & Families Dep't v. Lorena R.*, 1999-NMCA-035, ¶¶ 9-10, 126 N.M. 670, 974 P.2d 164 (applying the *Duran* presumption of ineffective assistance of counsel when the notice to appeal the termination of parental rights was filed one day late).

**{9}** Defendant's counsel in this case did file a timely notice of appeal the first time the case came before us in 2010. However, defense counsel was also obligated to obtain from

3

the district court a final written order denying the motion to suppress pursuant to our April 27, 2010 order. This was not done, and counsel's inaction resulted in dismissal of the appeal. There is no material difference between an attorney who fails to timely file a notice of appeal and an attorney who files a timely notice of appeal but causes the appeal to be dismissed due to his inaction. The result in each situation is the same: it denies the defendant her constitutional right to appeal. *See Olguin v. State*, 1977-NMSC-034, ¶ 7, 90 N.M. 303, 563 P.2d 97 (concluding that where counsel filed a timely notice of appeal but did not perfect the appeal because the docketing statement was not filed on time, dismissal of the appeal was not warranted). Thus, we extend the *Duran* conclusive presumption of ineffective assistance of counsel to this case with the result that we have jurisdiction to decide this appeal.

## II.    WHETHER THE APPEAL IS MOOT

### A.    Facts

**{10}**    Due to the amount of time that has passed since Defendant was sentenced, and because execution of the sentence was not stayed during the pendency of the appeal, Defendant has completed serving her sentence. The State therefore argues that the appeal is moot, and we should not address Defendant's appeal on the merits. We disagree.

### B.    Analysis

**{11}**    We generally do not decide a case when it has become moot, that is, when we cannot grant the appellant any relief. *State v. Favela*, 2013-NMCA-102, ¶ 13, 311 P.3d 1213, *cert. granted*, 2013-NMCERT-010, 313 P.3d 251. However, we still review criminal convictions where the conviction has continuing collateral consequences, "such as mandatory sentence increases for subsequent offenses, limitations on eligibility for certain types of employment, and voting restrictions." *State v. Sergio B.*, 2002-NMCA-070, ¶ 10, 132 N.M. 375, 48 P.3d 764. Our DWI statute, NMSA 1978, § 66-8-102 (2007, amended 2010), requires mandatory sentence increases for subsequent DWI convictions. Thus, even assuming the State is correct that our decision cannot affect Defendant's sentence for this conviction, it is nonetheless not moot because our decision may have collateral consequences for Defendant in the future.

## III.    THE MOTION TO SUPPRESS

### A.    Facts

**{12}**    Officer Rempe was the only witness that testified at the suppression hearing, and he testified as follows. He was parked in his patrol car at a gas station watching for traffic infractions and "running plates," when he observed a red pickup truck with three or more people in the cab and a dog in the back parked at the gas pumps. Defendant was the driver of the truck, but she did not get out. Instead, a passenger got out to pump the gas, which

4

Officer Rempe found "unusual."

**{13}** Officer Rempe turned his attention to the white car parked at the pump behind Defendant's truck, and after "running" the vehicle's plate, he determined the registration was expired. As he approached the white vehicle, he saw Defendant's truck drive away. Officer Rempe told the driver of the white car why he was being detained and asked for his license. The driver, Emerson Yazzie, produced his license and asked, "Why are you stopping me? There are other people out there." Officer Rempe asked him what he meant and Mr. Yazzie responded, "That red pickup with the dog in the back—they're wasted, bro." Officer Rempe handed Mr. Yazzie back his license, abandoned writing him a citation, and pursued the red truck "as fast as [he] could." As soon as he located Defendant's truck, he activated his emergency lights to initiate a stop, which led to Defendant's DWI charge.

**{14}** Officer Rempe also testified that in deciding to pursue the red pickup, he had compared the worst-case scenarios of abandoning an expired plate stop versus failing to pursue a potential DWI. He concluded that if Mr. Yazzie was lying, he had all of his information already and could send him a ticket in the mail, but if he was correct, a DWI posed a greater threat to public safety.

**{15}** On cross examination, Officer Rempe testified that he never saw Defendant outside of the vehicle at the gas station, nor did he see her ever speak or interact with Mr. Yazzie, who was merely parked behind her at the pump. He also confirmed that when he stopped Defendant, it was based on the information that the driver of the red pickup with the dog in the back was "wasted," and not on any driving behavior witnessed by him.

**B.    Analysis**

**{16}** An appeal from the denial of a motion to suppress involves an application of the law to the facts, which we review de novo. *State v. Contreras*, 2003-NMCA-129, ¶ 4, 134 N.M. 503, 79 P.3d 1111. Our review entails determining "whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). "Determinations of reasonable suspicion are reviewed de novo." *State v. Garcia*, 2009-NMSC-046, ¶ 9, 147 N.M. 134, 217 P.3d 1032.

**{17}** Defendant challenged the justification for Officer Rempe's stop under *Contreras*, 2003-NMCA-129, ¶¶ 1-3, a case addressing whether an anonymous tip was sufficient to establish reasonable suspicion to stop a vehicle under the Fourth Amendment. No argument was made or preserved by Defendant that our state constitution affords her greater protection than the Fourth Amendment. Federal precedent under to the Fourth Amendment is therefore applicable and binding on us here.

**{18}** "Before a police officer makes a traffic stop, he must have a reasonable suspicion of illegal activity." *State v. Hubble*, 2009-NMSC-014, ¶ 7, 146 N.M. 70, 206 P.3d 579 (internal

quotation marks and citation omitted); *see State v. Munoz*, 1998-NMCA-140, ¶ 8, 125 N.M. 765, 965 P.2d 349 ("Law enforcement officers can constitutionally stop a motor vehicle if they have a reasonable suspicion that the law has been or is being violated." (internal quotation marks and citation omitted)). "We will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Hubble*, 2009-NMSC-014, ¶ 8 (internal quotation marks and citation omitted). Whether the police have a reasonable suspicion depends on the totality of the circumstances and depends "on both the content of information possessed by the police and its degree of reliability." *Contreras*, 2003-NMCA-129, ¶ 5.

**{19}** Defendant argues that *Contreras* supports her argument that Officer Rempe's stop of her truck was not supported by reasonable suspicion, while the State argues that *Contreras* supports its argument that the stop was based on reasonable suspicion. In *Contreras*, an anonymous motorist called to notify police that a possible drunk driver in a grey van towing a red Geo was driving erratically. *Id.* ¶ 2. Police officers made contact with the defendant's vehicle, which matched that description and initiated a stop without observing any erratic driving. *Id.* The defendant was arrested for DWI following that stop. *Id.* The defendant moved to suppress the evidence obtained as a result of that stop, arguing that because the police themselves did not observe any suspicious or criminal behavior to justify the stop, the tipster's information was not corroborated, and therefore there was no reasonable suspicion for the stop. *Id.* ¶ 3. The district court granted the motion. *Id.*

**{20}** In the State's appeal, we examined whether, under the totality of the circumstances, the tip "contained sufficient information and was sufficiently reliable to provide the deputies with reasonable suspicion that a crime was being or was about to be committed, or if the possible danger to public safety was sufficient for the deputies to conduct the investigatory stop." *Id.* ¶ 7. Reversing the district court, we concluded that the facts of the case allowed "the inference that the anonymous caller was a reliable concerned motorist; the information given was detailed enough for the deputies to find the vehicle in question and confirm the description; and the caller was an apparent eyewitness to the erratic driving." *Id.* ¶ 21.

**{21}** Defendant argues that unlike the tipster in *Contreras*, Mr. Yazzie is not a reliable concerned citizen because he was deflecting Officer Rempe's attention away from his own illegal behavior, and ultimately succeeded in getting Officer Rempe to abandon writing him a ticket. *See State v. Evans*, 692 So. 2d 216, 219 (Fla. Dist. Ct. App. 1997) (stating that Florida courts presume that citizen-informants are reliable because they have nothing to gain by giving the information to authorities).

**{22}** This argument overlooks the fact that Officer Rempe had Mr. Yazzie's identifying information and Officer Rempe's testimony that he planned to hold Mr. Yazzie accountable by mailing him his ticket if he later determined Mr. Yazzie was lying. *See State v. Robbs*, 2006-NMCA-061, ¶ 13, 139 N.M. 569, 136 P.3d 570 (concluding that a person willing to identify himself to the police when providing a tip was more reliable than an anonymous

6

tipster because he "could have been held accountable if the information was false"). Thus, the balance here weighs in favor of finding Mr. Yazzie to be a reliable citizen-informant, and we reject Defendant's argument. *See Contreras*, 2003-NMCA-129, ¶ 21 (stating that the reliability of tips must be judged on the facts of each case).

**{23}** The fact that Mr. Yazzie was a reliable tipster is not enough. We must also determine whether Mr. Yazzie's information provided Officer Rempe with a reasonable suspicion that Defendant was committing a crime, that is, driving while intoxicated. In *Contreras*, we stated that in determining the existence of reasonable suspicion, Fourth Amendment jurisprudence requires us to "weigh the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." 2003-NMCA-129, ¶ 13. We came to this conclusion based on the United States Supreme Court decision in *Florida v. J.L.*, 529 U.S. 266, 273-74 (2000), which stated that under the Fourth Amendment, public safety considerations, coupled with a diminished expectation of privacy, may warrant conducting a protective search on the basis of information which may be otherwise insufficient to justify a search. *See Contreras*, 2003-NMCA-129, ¶ 6. We therefore determined that "we must balance the possible threat of drunk driving to the safety of the public with [the d]efendant's right to be free from unreasonable seizure." *Id.* ¶ 13. After noting New Mexico's serious drunk driving problem and the threat of potential injury or death that drunk drivers pose to innocent citizens, we concluded that "the gravity of the public concern and the public interest served by the seizure, weigh heavily in the balancing test." *Id.* ¶ 14. We also noted that moving vehicles with intoxicated drivers pose a greater threat than other possessory types of crimes like carrying a concealed weapon, yet a brief investigatory stop is less intrusive than, for example, a pat-down search. *Id.* ¶¶ 14-16. In such circumstances, we noted, various courts had concluded post *J.L.* that investigatory stops based on anonymous tips describing possible drunk driving are justified, where information provided by the tip such as a description and location of the vehicle, was corroborated. *Contreras*, 2003-NMCA-129, ¶¶ 17-20; *see also State ex rel. Taxation & Revenue Dep't Motor Vehicle Div. v. Van Ruiten*, 1988-NMCA-059, ¶¶ 2-3, 8-11, 107 N.M. 536, 760 P.2d 1302 (concluding that a police officer had a reasonable suspicion that the defendant was driving while intoxicated when he received a radio dispatch that an unidentified person called the police and said he had observed a man in a 7-11 store who was "very intoxicated," that the intoxicated man left the store driving south on a certain highway in a truck he particularly described, and the police officer saw the described truck driving south on that highway fifteen minutes later). Here, Officer Rempe testified that his concern for public safety trumped any concern he had about Mr. Yazzie's expired registration, and this concern is what prompted him to immediately seek out Defendant's vehicle.

**{24}** For the foregoing reasons, we hold that under the totality of the circumstances of this case, and viewing the facts in the light most favorable to the State as the prevailing party, Officer Rempe's investigatory stop of Defendant's truck was supported by reasonable suspicion under a Fourth Amendment analysis.

7

**CONCLUSION**

**{25}** The district court order denying Defendant's motion to suppress is affirmed.

**{26}** **IT IS SO ORDERED.**

                         _____

                         **MICHAEL E. VIGIL, Judge**

**WE CONCUR:**


_____

**MICHAEL D. BUSTAMANTE, Judge**


_____

**TIMOTHY L. GARCIA, Judge**