(184 P.3d 951)
No. 97,165

STATE OF KANSAS, *Appellee*, v. MARK L. PRITCHARD, *Appellant*.

Opinion filed May 30, 2008.

*Carl Folsom, III*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before HILL, P.J., GREEN and STANDRIDGE, JJ.

HILL, J.: Mark L. Pritchard appeals his drug convictions. Mainly, he claims the search of his campsite was illegal and the trial court should have suppressed any evidence discovered by the search. When reviewing a magistrate's decision to issue a search warrant, our courts (district and appellate) have adopted a deferential standard of review. The reviewing court must decide whether any affidavit (or testimony) seeking the warrant provides a substantial basis for the magistrate's determination there is a fair likelihood that contraband or evidence of a crime will be where the officers want to search. Here, the affidavit revealed ample evidence of possible compounding of drugs. Pritchard's campsite had at least 5 gallons of camp fuel, five propane tanks, a gas can with a clear plastic tube attached, and no camp stoves or lanterns were in the camp. Also, a trip alarm had been set at the camp's perimeter. Because of this evidence, we hold there was a legal basis for the

magistrate to issue the warrant, and the district court did not err when it denied Pritchard's motion to suppress.

A secondary issue arises in this case. Pritchard was convicted of possession of drug paraphernalia with intent to manufacture a controlled substance and possession of drug paraphernalia with intent to use to package a controlled substance for sale. The parties have agreed to the facts. They show these charges arose from the same conduct. Because these counts fall within one unit of prosecution and the court made no fact findings to distinguish the two counts, Pritchard's convictions are multiplicitous. We reverse his conviction on count VI.

*The parties agreed to the facts and the case was tried to the court.*

We summarize the facts for our opinion. Reno County Deputy Sheriff Cory Griffith submitted an affidavit for a search warrant on May 11, 2005. He alleged that probable cause existed to search a campsite located near Cheney Lake. The search warrant was issued and executed on the same day.

The deputy received his information from several sources. From this information he believed that methamphetamine was being manufactured at the campsite. His sources can be classified into three categories: (1) The confidential informant's statement that the manufacture of methamphetamine was occurring at Pritchard's campsite; (2) observations of items associated with the manufacture of methamphetamine at Pritchard's campsite; and (3) Pritchard's history of manufacturing methamphetamine.

### 1. **The confidential informant's statement**:

On May 7, 2005, a "reliable C.I." reported to a KBI special agent that "there was a meth cook occurring at Cheney State Lake." The confidential informant did not identify the persons involved but specifically described the location of the campsite. The confidential informant also noted that the subjects had two campers at the campsite and "some type of alarm set up" to warn them when vehicles approached the campsite. From the description, the KBI special agent was able to identify the exact location of the campsite.

### 2. **Items at Pritchard's campsite**:

Cheney State park rangers' personal observations. On the evening of May 7, 2005, three Cheney State park rangers made contact with the persons at the identified campsite: Pritchard's wife, Jeff Reese, and four minor children. Pritchard was not present, but his wife stated that he would return. While at the campsite, the park rangers observed four large coolers, seven 1-gallon cans of camp fuel, six propane tanks, and a shotgun. The park rangers did not observe any lanterns or cook stoves, and Pritchard's wife and Jeff Reese were unable to supply a reason for the large amount of camp fuel.

Deputy Griffth's personal observations. On May 9, 2005, Deputy Griffith and another park ranger checked out the campsite and verified that there were two campers, one of which was a fifth-wheel camper. The fifth-wheel camper was secured by a factory lock while the other camper was secured by a 1-inch link section of chain and a large lock. Neither camper had registration tags. Additionally, at the campsite, the deputy observed a black car trailer, five 1-gallon cans of camp fuel, four propane tanks around the campers, one propane tank set back in the woods west of the campsite, and a gas can with a clear plastic tube attached. He did not observe any lanterns or cook stoves at the campsite. Later that night, Pritchard, Pritchard's wife, and Pritchard's child were seen at the campsite.

The deputy's training and experience. Through his training and experience, the affiant attested that "[c]hemicals that I know from my training and experience can be used in the manufacturing process include ether . . . , Coleman or other brand camp stove fuel and sulfuric acid." The deputy further stated that "camp fuel is a chemical solvent used in the manufacturing of methamphetamine in the Nazi or Burch reduction method."

### 3. **Pritchard's criminal history**:

Reno County Drug Enforcement Unit. Information from the Reno County Drug Enforcement Unit (DEU) stated that Pritchard has been involved in the manufacture of methamphetamine in Reno County, Kansas, since July 2001. The DEU information also

included reports specifying Pritchard's past involvement with cooking methamphetamine at campsites at Cheney State Lake.

Pritchard's 2004 arrest related to methamphetamine. In 2004, Pritchard and his wife were arrested for the possession of ephedrine/pseudoephedrine with the intent to manufacture methamphetamine and the possession of lithium metal with the intent to manufacture methamphetamine. Pritchard's jury trial for those charges was scheduled for June 14, 2005, about a month after the search in this case.

Nancy Gay's statement. On April 14, 2005, Nancy Gay reported to the deputy that Pritchard and his wife lived in a fifth-wheel camper located at 1915 E. 30th Avenue in Hutchinson. Gay is an official from the Reno County Health Department. Gay contacted the deputy because she observed items on the trailer next to Pritchard's camper which she believed were related to drug manufacturing. These items were a large cooler and a gas can with a clear hose attached to it. Gay, however, noted that Pritchard was not allowed to reside at 1915 East 30th Avenue due to his prior felony convictions relating to marijuana; the residence was a daycare provider.

Thomas W. Martin's vehicle. While the park rangers were leaving the campsite on May 7, 2005, a white male arrived driving a vehicle registered to Thomas W. Martin and Pritchard's wife. Martin at the time had two pending criminal cases in Reno County District Court for crimes related to methamphetamine. Martin's criminal cases arose from arrests that occurred just about a month earlier, on April 19 and April 25, 2005.

When the officers searched the campsite, Pritchard and three others, including a child, were present. In the campers the officer seized various items related to the manufacture or sale of methamphetamine. They seized more than a gram of methamphetamine that did not have tax stamps. The officers also discovered monitors in the campers that were part of a surveillance system surrounding the campers. Immediately following the seizure of this evidence, the State charged Pritchard with several drug-related crimes.

Prior to trial, Pritchard moved to suppress the evidence seized from the campsite, contending the affidavit that supported the

search warrant was inadequate. A hearing was conducted in which the district court reviewed the information contained in the affidavit. From that information, the district court concluded that the officers verified a confidential informant's statements that there was manufacturing of methamphetamine occurring at the campsite. The court went on and denied Pritchard's motion by holding that "probable cause [was] contained within the four corners of the affidavit sufficient to issue the search warrant."

After a bench trial, relying upon the parties' stipulated facts, the district court convicted Pritchard of nine counts: (1) one count of conspiracy to manufacture methamphetamine with the overt act being the manufacture of methamphetamine; (2) one count of possession of ephedrine or pseudoephedrine with the intent to manufacture a controlled substance; (3) one count of possession of lithium metal with intent to manufacture a controlled substance; (4) one count of possession of drug paraphernalia with intent to manufacture a controlled substance; (5) one count of possession of methamphetamine with intent to sell; (6) one count of possession of drug paraphernalia with intent to use to package a controlled substance for sale; (7) one count of possession of methamphetamine without tax stamps affixed; (8) one count of possession of marijuana with a prior conviction; and (9) one count of possession of drug paraphernalia with intent to use to introduce a controlled substance to the human body.

At sentencing, the court classified Pritchard's primary offense of conspiracy to manufacture methamphetamine at a criminal history score of E and his other offenses at a criminal history score of I. For his primary offense, Pritchard was sentenced to 156 months in prison, with the sentences for his other offenses to run concurrently.

*This search warrant is based on probable cause.*

On appeal, Pritchard argues that the district court erred in denying his motion to suppress for two reasons. First, Pritchard asserts that the search warrant affidavit failed to set forth facts to support a finding of probable cause that he and others were manufacturing methamphetamine. We disagree. Second, Pritchard ar-

gues that the good faith exception to the exclusionary rule does not apply. Because there is probable cause we need not address that argument.

If a suppression motion involves a challenge to the affidavit supporting the application for a search warrant, an appellate court reviews the magistrate judge's finding of probable cause to issue a search warrant under a different standard. *State v. Fisher*, 283 Kan. 272, 300, 154 P.3d 455 (2007). As stated in *State v. Hicks*, 282 Kan. 599, Syl. ¶ 2, 147 P.3d 1076 (2006), the standard of review is inherently deferential to the magistrate judge and is owed by all reviewing courts, district and appellate. See *Fisher*, 283 Kan. at 300.

When reviewing the magistrate's decision to issue a warrant, the reviewing court conducts an independent analysis of the content of the affidavit. But, because of this deferential standard, the reviewing court needs only to see enough to persuade it that there was a substantial basis for the magistrate's conclusion that probable cause existed. *Fisher*, 283 Kan. at 300-01; *Hicks*, 282 Kan. at 612-13. Stated in another way, the standard does not demand the reviewing court to determine whether, as a matter of law, probable cause existed; rather, the standard translates to whether the affidavit provided substantial basis for the magistrate's determination that there is a fair probability that contraband or evidence of a crime will be found in a place to be searched. *Fisher*, 283 Kan. at 300, 304.

We have previously listed the three categories of information contained in the deputy's affidavit. We will not repeat them. Kansas has adopted the totality of the circumstances analysis set forth in *Illinois v. Gates*, 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), for judging the credibility and reliability of information obtained from a confidential informant. *State v. Henry*, 263 Kan. 118, 127, 947 P.2d 1020 (1997). Where direct evidence of the informant's reliability or credibility is lacking, corroboration by independent police investigation may suffice. *State v. Fisher*, 24 Kan. App. 2d 103, 111, 942 P.2d 49 (1997).

Here, because the affidavit only provided a statement that the confidential informant was "reliable," law enforcement officers

took action to corroborate the confidential informant's statement. Officers verified the location of the campsite and confirmed that at least two campers were there. Further, they also established Pritchard's connection with the identified campsite and that Pritchard had a history of manufacturing methamphetamine, which included "cooking methamphetamine" at campsites at Cheney State Lake.

Park rangers confirmed the presence of a large amount of camp fuel at the campsite and the probability that the camp fuel was not being used for ordinary activities related to camping. Those same officers did not observe any lanterns or cook stoves that used camp fuel, and Pritchard's wife was unable to provide a reason why such a large amount of camp fuel was present at the campsite. As attested to by the deputy, camp fuel is known to be used as a chemical solvent in the manufacture of methamphetamine.

Examining the content of the affidavit, it is clear that law enforcement provided evidence to corroborate the confidential informant's statement that the manufacturing of methamphetamine had been or was occurring at Pritchard's campsite. As such, there was a substantial basis for the magistrate to conclude that probable cause existed. Therefore, the district court did not err in denying Pritchard's motion to suppress.

*By using the unit of prosecution test we find two of Pritchard's convictions are multiplicitous.*

Pritchard was convicted of possession of drug paraphernalia with intent to manufacture a controlled substance and possession of drug paraphernalia with intent to use to package a controlled substance for sale (counts IV and VI). On appeal, Pritchard argues that these counts are multiplicitous on the allegations that both the complaint and the stipulation of facts failed to indicate which items supported which conviction and that both counts violated the same statute, K.S.A. 65-4152(a)(3).

Whether convictions are multiplicitous is a question of law subject to unlimited review. *State v. Schoonover,* 281 Kan. 453, 462, 133 P.3d 48 (2006). Multiplicity is the charging of a single offense in more than one count of a complaint or information. It creates

the potential for multiple punishments for a single offense, violating the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. *State v. Green*, 38 Kan. App. 2d 781, 784, 172 P.3d 1213 (2007).

When examining a double jeopardy issue of this type, our Supreme Court has stated that the overarching inquiry is whether the convictions are for the same offense. Two questions must be answered: (1) Do the convictions arise from the same conduct? and (2) By statutory definition are there two offenses or only one? If the answers are yes and one, then there is a double jeopardy violation. *Schoonover*, 281 Kan. at 496.

### 1. Do the convictions arise from the same conduct?

*Schoonover* teaches us to look at four factors: (1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct. 281 Kan. at 497.

In this case, the record clearly indicates that the charges of possession of drug paraphernalia with intent to manufacture a controlled substance and possession of drug paraphernalia with intent to use to package a controlled substance for sale arose from the same conduct. First, both charges in the second amended complaint relied upon the evidence seized from the campsite, which occurred on May 11, 2005. Second, the stipulation of facts state that the "items seized from the campsite are drug paraphernalia and were intended for the manufacture of methamphetamine, the packaging of methamphetamine for sale, and for the introduction of controlled substances into the human body." Third, at Pritchard's trial, the district court failed to make any factual findings to distinguish count IV from count VI. We must answer this question "yes."

## 2. By statutory definition are there two offenses or only one?

Since we are dealing here with a single statute, we must apply a unit of prosecution test. See *Schoonover*, 281 Kan. at 497. "Under this test, the statutory definition of the crime determines what the legislature intended as the allowable unit of prosecution. There can be only one conviction for each allowable unit of prosecution." 281 Kan. at 497-98.

Here, both convictions fell under K.S.A. 65-4152(a)(3). PIK Crim. 3d 67.17, which lists the elements of K.S.A. 65-4152, states:

"67.17 SIMULATED CONTROLLED SUBSTANCES, DRUG PARA-PHERNALIA, ANHYDROUS AMMONIA OR PRESSURIZED AM-MONIA-USE OR POSSESSION WITH INTENT TO USE

"The defendant is charged with the crime of unlawfully (using) (*possessing with intent to use*) [insert name of simulated controlled substance, *drug paraphernalia*, anhydrous ammonia or pressurized ammonia]. The defendant pleads not guilty.

"*To establish this charge, each of the following claims must be proved:*

"1. *That the defendant knowingly* (used) (*possessed with the intent to use*)

    (a) [insert name of simulated controlled substance]; and

OR

    (b) drug paraphernalia to (use, store, contain, conceal [insert name of controlled substance]) (inject, ingest, inhale, or otherwise introduce [insert name of controlled substance] into the human body); and

OR

    (c) *drug paraphernalia to* plant, propagate, cultivate, grow, harvest, *manufacture*, compound, convert, produce, process, prepare, test, analyze, *pack*, repack, sell or distribute [insert name of *controlled substance*]; and

OR

    (d) anhydrous ammonia or pressurized ammonia in a container not approved for that chemical by the Kansas Department of Agriculture; and

"2. That this act occurred on or about the _____ day of _____, _____, in _____ County, Kansas." (Emphasis added.)

According to PIK Crim. 3d 67.17(1)(c), the charges of possession of drug paraphernalia with intent to *manufacture* a controlled substance and possession of drug paraphernalia with intent to use to

*package* a controlled substance for sale would fall within one unit of prosecution. Therefore, based on these facts, Pritchard's convictions in counts IV and VI are for the same offense.

K.S.A. 2007 Supp. 65-4101(n) supports our conclusion, and it states:

> " *'Manufacture'* means the production, preparation, propagation, compounding, conversion or processing of a controlled substance either directly or indirectly or by extraction from substances of natural origin or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis *and includes any packaging or repackaging of the substance or labeling or relabeling of its container,* except that this term does not include the preparation or compounding of a controlled substance by an individual for the individual's own lawful use or the preparation, compounding, packaging or labeling of a controlled substance: (1) By a practitioner or the practitioner's agent pursuant to a lawful order of a practitioner as an incident to the practitioner's administering or dispensing of a controlled substance in the course of the practitioner's professional practice; or (2) by a practitioner or by the practitioner's authorized agent under such practitioner's supervision for the purpose of or as an incident to research, teaching or chemical analysis or by a pharmacist or medical care facility as an incident to dispensing of a controlled substance." (Emphasis added.)

We must therefore answer the second question "one." By application of the unit of prosecution rule, we find the two convictions multiplicitous. We reverse his conviction for count VI.

*The sentences imposed for possession of pseudoephedrine and possession of lithium metal are proper.*

Pritchard was convicted of possession of ephedrine or pseudoephedrine with intent to manufacture a controlled substance and for possession of lithium metal with intent to manufacture a controlled substance (counts II and III), in violation of K.S.A. 65-7006, which are severity level 1 drug felonies. But the sentencing court imposed a sentence in accordance with a severity level 4 of the sentencing guidelines for drug crimes even though the journal entry indicated that these convictions constitute a severity level 1 drug offense. See K.S.A. 21-4705(a).

Nonetheless, Pritchard challenges these sentences on appeal, claiming that he should have been sentenced at severity level 4 drug felony under K.S.A. 65-4152(a)(3). Our Supreme Court has

decided that the application of the identical offense rule, as set forth in *State v. Frazier*, 30 Kan. App. 2d 398, 42 P.3d 188, *rev. denied* 274 Kan. 1115 (2002), does not change the severity level of possession of ephedrine or pseudoephedrine conviction from a severity level 1 drug crime to a severity level 4 drug crime but requires that the length of the sentence imposed to be reduced to the least of the penalties of the two identical offenses. *State v. Walker*, 280 Kan. 513, 518, 124 P.3d 39 (2005). Therefore, because the sentencing court imposed such a lesser sentence, we find no error.

*Pritchard's criminal history did not have to be proved beyond a reasonable doubt to the jury.*

Pritchard argues that his rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated because his prior convictions were not included in his complaint, and the State was not required to prove those convictions to a jury beyond a reasonable doubt as required by *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). The Kansas Supreme Court decided otherwise in *State v. Ivory*, 273 Kan. 44, 47-48, 41 P.3d 781 (2002). Having no indication that our Supreme Court is departing from its decision in *Ivory*, this court is duty bound to follow it.

Affirmed in part and reversed in part.