# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>October 17, 2017</u>

**NO. A-1-CA-34014**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.

**KENNETH TIDEY,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Daniel Viramontes, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Tonya Noonan Herring, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**GARCIA, Judge.**

{1}     Following a traffic stop that also resulted in an arrest and search, Defendant Kenneth Tidey was convicted of one count of possession of methamphetamine with intent to distribute, two counts of possession of drug paraphernalia, and one count of driving with a suspended or revoked license. Defendant raised two different challenges based upon double jeopardy grounds. First, Defendant challenges his two separate convictions of possession of drug paraphernalia. One conviction was based upon his possession of over ninety small plastic baggies and the second conviction was based upon his possession of a red straw with a burnt end. As a matter of first impression, we agree with Defendant that based upon the definition of containers used as drug paraphernalia statutes and the insufficient indicia of distinctness regarding the containers in his possession, the evidence does not support these two separate convictions for possession of drug paraphernalia. We vacate Defendant's conviction for possession of drug paraphernalia that was based upon the numerous small plastic baggies and affirm his conviction for possession of drug paraphernalia that was based upon the red straw with a burnt end. As a result, we determine that it is unnecessary to address Defendant's second double jeopardy argument. This second argument challenges whether his drug paraphernalia conviction for possession of the

numerous small plastic baggies and his separate conviction for possession of methamphetamine that was contained in a small plastic baggie violate double jeopardy. Defendant's remaining arguments are unpersuasive and we affirm his remaining convictions.

**BACKGROUND**

{2}     On March 17, 2012, Lieutenant Conrad Jacquez, with the Deming, New Mexico Police Department, stopped Defendant's vehicle in response to a tip advising that a driver of a gray Ford Crown Victoria was driving erratically, indicating a possible drunk or reckless driver. Lieutenant Jacquez requested Defendant's driver's license, registration, and insurance. Defendant handed Lieutenant Jacquez his New Mexico identification card. After running his identification, Lieutenant Jacquez determined that Defendant's license had been revoked. Lieutenant Jacquez asked Defendant to step out of the vehicle, he advised Defendant of the reason for his arrest, and placed him under arrest for driving on a revoked license. Defendant did not exhibit any signs of intoxication.

{3}     Prior to placing Defendant in the back of the police car, Lieutenant Jacquez asked Defendant if he had anything on his person that could hurt him. Defendant responded that he had a knife in one of his pockets. In searching for the knife, Lieutenant Jacquez pulled from Defendant's left front pocket a large clear bag

2

containing ninety-seven empty smaller clear bags with red lips painted on them, as well as an empty red straw with one burnt end. Not finding the knife, Lieutenant Jacquez then searched Defendant's right front pocket and found a similar small plastic bag containing a white powdery substance and the knife. Lieutenant Jacquez testified at trial that the small bags, one inch by one inch with a zip-lock top (the baggies), are commonly used to package methamphetamine. He also testified that straws with burnt ends are another way to package methamphetamine or other narcotics and are never used for smoking. Lieutenant Jacquez did not find any instruments on Defendant for ingesting methamphetamine, such as needles or pipes.

{4} Upon placing Defendant in the back of the police vehicle, Lieutenant Jacquez asked if he could search Defendant's vehicle. Around this time, the owner of the vehicle arrived, and she gave Lieutenant Jacquez consent to search the vehicle. Lieutenant Jacquez and a second officer searched the vehicle and found a pack of cigarettes under the armrest in the front seat. Inside the cellophane wrapper of the pack, the officers found three small baggies of the same type found in Defendant's pocket also containing a similar white powdery substance. At trial, a forensic crime expert testified that the four small baggies were tested and contained methamphetamine, but only three contained a "weighable amount."

{5} The State filed a criminal information on May 1, 2012, charging Defendant

with the following four counts: (1) trafficking in a controlled substance (by possession with intent to distribute), pursuant to NMSA 1978, Section 30-31-20(A)(3) (2006); (2) possession of drug paraphernalia, "straws", pursuant to NMSA 1978, Section 30-31-25.1(A) (2001); (3) possession of drug paraphernalia, "plastic baggies," pursuant to Section 30-31-25.1(A); and (4) driving with a suspended or revoked license, pursuant to NMSA 1978, Section 66-5-39 (1993, amended 2013). Following a jury trial, the jury found Defendant guilty of the lesser included offense of possession of a controlled substance (Count 1), both counts of possession of drug paraphernalia (Counts 2 and 3), and driving without a license (Count 4). Defendant now appeals.

**DISCUSSION**

{6}     Defendant makes the following arguments on appeal: (1) Defendant's drug-related convictions violate double jeopardy, (2) the district court erred in denying Defendant's motion to suppress evidence for a lack of reasonable suspicion, (3) the evidence presented at trial was insufficient to support Defendant's convictions, and (4) Defendant's right to a speedy trial was violated.

**I.      Double Jeopardy**

{7}     Defendant makes two related double jeopardy arguments. First, he argues that his two convictions for possession of drug paraphernalia violate double jeopardy as

4

the acts were not sufficiently distinct to warrant two separate charges. Second, he argues that his convictions for possession of methamphetamine and possession of drug paraphernalia violate double jeopardy because the jury instructions failed to distinguish between the empty baggies in Defendant's pocket and the baggies that contained the white powdery substance tested to be methamphetamine.

{8}     "A double jeopardy challenge is a constitutional question of law which [the appellate courts] review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. The Fifth Amendment of the United States Constitution, made applicable to New Mexico by the Fourteenth Amendment, prohibits double jeopardy. U.S. Const. amends. V & XIV, § 1. The prohibition "functions[,] in part[,] to protect a criminal defendant against multiple punishments for the same offense." *Swick*, 2012-NMSC-018, ¶ 10 (internal quotation marks and citation omitted). Double jeopardy cases involving multiple punishments are classified as either "double-description case[s], where the same conduct results in multiple convictions under different statutes[,]" or "unit-of-prosecution case[s], where a defendant challenges multiple convictions under the same statute." *Id.*

**A.     Defendant's Two Convictions for Possession of Drug Paraphernalia Violate Double Jeopardy**

{9}     Defendant challenges his two convictions for possession of drug paraphernalia, pursuant to Section 30-31-25.1(A)—one for possession of the small baggies and the

5

other for the red straw with a burnt end. We apply a unit-of-prosecution analysis, as we are examining multiple convictions under the same statute. *See State v. Gallegos*, 2011-NMSC-027, ¶ 31, 149 N.M. 704, 254 P.3d 655. In such cases, the appellate courts seek to determine, "based upon the specific facts of each case, whether a defendant's activity is better characterized as one unitary act, or multiple, distinct acts, consistent with legislative intent." *State v. Bernal*, 2006-NMSC-050, ¶ 16, 140 N.M. 644, 146 P.3d 289. *Bernal* requires us to determine the unit-of-prosecution intended by the Legislature by employing a "two step" analysis. *Id.* ¶ 14.

> First, we review the statutory language for guidance on the unit[-]of[-]prosecution. If the statutory language spells out the unit[-]of[-]prosecution, then we follow the language, and the unit-of-prosecution inquiry is complete. If the language is not clear, then we move to the second step, in which we determine whether a defendant's acts are separated by sufficient 'indicia of distinctness' to justify multiple punishments under the same statute. In examining the indicia of distinctness, courts may inquire as to the interests protected by the criminal statute, since the ultimate goal is to determine whether the [L]egislature intended multiple punishments. If the acts are not sufficiently distinct, then the rule of lenity mandates an interpretation that the [L]egislature did not intend multiple punishments, and a defendant cannot be punished for multiple crimes.

*Id.* (internal quotation marks and citations omitted)

{10} This Court has not previously applied the unit-of-prosecution analysis to a possession of drug paraphernalia case involving the simultaneous possession of more than one form of a container used for holding illegal drugs. The statute prohibiting

6

possession of drug paraphernalia states, in pertinent part, that "[i]t is unlawful for a person to use or possess with intent to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance[.]" Section 30-31-25.1(A). The New Mexico Controlled Substances Act defines "drug paraphernalia" as

> all equipment, products and materials of any kind that are used, intended for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance or controlled substance analog in violation of the Controlled Substances Act.

NMSA 1978 § 30-31-2(V) (2009). Neither the legislative definition nor Section 30-31-25.1 indicate whether "paraphernalia" was intended to be construed as a singular or plural noun. The dictionary defines "paraphernalia" as "personal belongings," both singular and plural in number. *Webster's Third New Int'l Dictionary* 1638 (3d ed. 1993). Seeing no clear indication of a unit-of-prosecution in the statute, we look to the indicia-of-distinctness factors to determine whether Defendant's convictions for two different types of containers violate double jeopardy.

{11} To determine distinctness, our appellate courts have generally looked to "time and space considerations" of the defendant's acts, and if such considerations proved

7

unhelpful, whether the "quality and nature of the acts, or the objects and results involved" proved more useful. *Bernal*, 2006-NMSC-050, ¶ 16 (internal quotation marks and citation omitted). Our Supreme Court has summarized the factors to be considered as follows: "timing, location, and sequencing of the acts, the existence of an intervening event, the defendant's intent as evidenced by his conduct and utterances, and the number of victims." *State v. DeGraff*, 2006-NMSC-011, ¶ 35, 139 N.M. 211, 131 P.3d 61. However, "even when analyzing whether an indicium of distinctness sufficiently separates the acts of the accused to justify multiple punishment, we remain guided by the statute at issue, including its language, history, and purpose, as well as the quantum of punishment that is prescribed." *Gallegos*, 2011-NMSC-027, ¶ 33 (alteration, internal quotation marks, and citation omitted).

{12} In a somewhat analogous unit-of-prosecution case, the Kansas Court of Appeals determined that the defendant's multiple convictions for possession of drug paraphernalia arose from the same conduct and violated double jeopardy. *See State v. Pritchard*, 184 P.3d 951, 954 (Kan. Ct. App. 2008) (involving various items of paraphernalia that were used with the intent to manufacture a controlled substance and also with the intent to package it for sale). The Kansas court looked at similar factors to those utilized by this Court for determining whether, under a unit of prosecution test, the charges violate double jeopardy. *See id.* at 957 (addressing

"(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct"). The Kansas court first reasoned that because there were no factual findings to distinguish the two counts, the evidence was seized from the same location, at the same time, and was intended for the same purpose—manufacturing and storage of methamphetamine—the two convictions arose from the "same conduct." *Id.* at 957-58. Next, when the Kansas court interpreted its manufacturing statute, the two convictions were determined to be "multiplicitous" and were for the "same offense." *Id.* at 958-59. We agree with the logic applied by the Kansas court, especially where a defendant could face tens or even hundreds of counts of drug paraphernalia charges if each individual object or container found in a suspects possession during one encounter with law enforcement authorities constitutes a separate and distinct container-based paraphernalia offense.

{13}     In this case, there was also an insignificant indicia of distinctness presented to justify convicting Defendant of two counts of possession of drug paraphernalia under Section 30-31-25.1(A). First, Lieutenant Jacquez simultaneously found the objects available for use as containers for methamphetamine together in Defendant's left front pocket, the empty baggies and the red straw with a burnt end. Both

paraphernalia counts were based upon Lieutenant Jacquez's testimony that both objects were used for packaging, not for consumption or manufacturing. The single jury instruction given for both counts required the jury to find that Defendant intended to use the objects to "pack, repack, store, contain or conceal a controlled substance." Furthermore, there is no indication in the record of an intervening act, multiple victims, or any other factor that would distinguish Defendant's act of simply possessing separate containers for holding the methamphetamine that was also found in Defendant's possession.

{14} The State argues that the unit-of-prosecution language in this case is clear from the face of the statute and includes "every distinct item" that is used or intended to be used in violation of the Controlled Substance Act. The State primarily relies on our analysis in *State v. Leeson*, in which this Court concluded that the unit-of-prosecution for sexual exploitation of children, by manufacturing pornography, was clear from the statute. 2011-NMCA-068, ¶ 17, 149 N.M. 823, 255 P.3d 401. This Court reasoned that the Legislature's more specific definitions of the terms "manufacture," "obscene," and "visual or print medium" supported the conclusion that the scope of conduct constituting a violation of the statute was "readily discernible" so as to make each photograph manufactured by the defendant a separate and "discrete violation of the statute." *Id.* ¶¶ 16-17 (internal quotation marks omitted). However, the State

neglects to address the clear distinction from *Leeson* that was recognized by our Supreme Court in cases involving the possession of child pornography. *See State v. Olsson*, 2014-NMSC-012, ¶¶ 1-2, 324 P.3d 1230 (recognizing that multiple images of child pornography contained in three separate binders and an external computer hard drive could only be charged as one count of possession under the applicable statute). The possession statute's ambiguity regarding pornographic images located in various types of containers and the application of the rule of lenity resulted in a single conviction in *Olsson*. *Id.* We recognize below that the statutory definitions applicable in the present drug paraphernalia case are distinguishable from the statutory wording that criminalizes the possession or manufacture of child pornography. *See* Section 30-31-2(V) (setting out a non-exclusive list of definitions for drug paraphernalia). As a result, it would be difficult to draw any strict analogies from the child pornography cases when addressing the distinct statutory wording used for drug paraphernalia under Section 30-31-2(V).

{15} The Legislature specifically included a comprehensive list of defined items, although not all inclusive, that constitute drug paraphernalia. *See* § 30-31-2(V)(1)-(12). Critical to the present case, one defined form of paraphernalia is "containers and other objects used, intended for use or designed for use in storing or concealing controlled substances or controlled substance analogs[.]" Section 30-31-2(V)(10).

11

When we review the definitions contained in Section 30-31-2(V), they clearly fail to support the State's unit of prosecution argument. Instead, the plural words "containers and other objects used" as paraphernalia for storing a controlled substance support a single charge for Defendant's numerous containers—the empty baggies and the red straw with a burnt end. Section 30-31-2(V)(10). If we were to accept the State's argument that the Legislature intended to prosecute each individual object used as a "container" to hold the illegal controlled substance, then each small baggie in Defendant's pocket, all ninety-seven of them, would be the basis for a separate paraphernalia charge and conviction. Based upon the statutory language and definitions used by the Legislature, we agree with Defendant that the multiple containers available to hold the methamphetamine in Defendant's possession, must be charged as one single count of possession of drug paraphernalia. We reject the State's argument to the contrary.

{16} Alternatively, this Court could also recognize Defendant's argument that there is insufficient indicia of distinctness regarding the paraphernalia containers found in his pocket and apply the rule of lenity. *See State v. Barr*, 1999-NMCA-081, ¶ 15, 127 N.M. 504, 984 P.2d 185 ("[I]f the defendant commits discrete acts violative of the same statutory offense, but separated by sufficient indicia of distinctness, then a court may impose separate, consecutive punishments for each offense. With a sufficient

12

showing of distinctness, application of the rule of lenity would not be required." (internal quotation marks and citation omitted)). "[T]he rule of lenity . . . favor[s] a single unit[-]of[-]prosecution and disfavor[s] multiple units of prosecution." *Id.* ¶ 22. The State did not argue that the two forms of paraphernalia containers found in Defendant's pocket could also be used for other distinct purposes such as ingesting, smoking, or injecting methamphetamine. If necessary, the rule of lenity would also support Defendant's argument that these two types of containers only supported one container-based count of possession of drug paraphernalia.

{17} We now reverse and vacate Defendant's conviction for possession of drug paraphernalia based upon the ninety-seven empty "baggies" in Defendant's pocket because they have the least indicia of distinctiveness from each other and the similar baggies that contained a white powdery substance used as the substantive evidence in Defendant's conviction for possession of methamphetamine with intent to distribute. We affirm Defendant's drug paraphernalia conviction arising from the plastic straw with the burnt end—due to its more distinctive characteristics as another type of container to hold illegal drugs, as well as its distinguishment from the baggies actually used to hold Defendant's methamphetamine that was found in his right front pocket and the pack of cigarettes.

**B. Defendant's Separate Convictions for Possession of Drug Paraphernalia and Possession of a Controlled Substance, Methamphetamine, Do Not Violate Double Jeopardy**

{18} Defendant argues that his convictions for possession of drug paraphernalia, baggies, and possession of methamphetamine found inside similar baggies violate double jeopardy. Defendant asserts that if the jury based his conviction for possession of drug paraphernalia on the small baggies actually containing methamphetamine, then the convictions for possession of methamphetamine and possession of drug paraphernalia could violate double jeopardy under our decision in *State v. Almeida.* *See* 2008-NMCA-068, ¶ 21, 144 N.M. 235, 185 P.3d 1085 (concluding, in a double-description case, that "the [L]egislature did not intend to punish a defendant for possession of a controlled substance and possession of [drug] paraphernalia when the paraphernalia [charge] consists of only a container that is storing a personal supply of the charged controlled substance."); *see also State v. Foster*, 1999-NMSC-007, ¶ 27, 126 N.M. 646, 974 P.2d 140 (recognizing that "the Double Jeopardy Clause . . . require[s] a conviction under a general verdict to be reversed if one of the alternative bases for conviction provided in the jury instructions is legally inadequate because it violates a defendant's constitutional right to be free from double jeopardy" (internal quotation marks and citations omitted)), *abrogated on other grounds by State v. Montoya*, 2012-NMSC-010, ¶ 58, 345 P.3d 1056.

{19} In the present case, Defendant failed to assert that his second double jeopardy argument was based upon the drug paraphernalia conviction arising from red straw with a burnt end. As a result, we have now removed the factual predicate necessary for Defendant's argument that he premised on our holding in *Almeida*. *See* 2008-NMCA-068, ¶ 21 (focusing on the same pipe containing the defendant's controlled substance as the basis for both the possession of a controlled substance and the drug paraphernalia charges). Because Defendant does not argue that the jury was confused by the red straw evidence or that this evidence was an improper alternative basis to convict Defendant for possession of drug paraphernalia, it is unnecessary to address Defendant's second argument—a reversal of the second drug paraphernalia conviction that was based upon the jury instruction and the jury's potential confusion with the small baggies that were both empty and full. *See Foster*, 1999-NMSC-007, ¶ 27 (holding that "due process does not require a general verdict of guilty to be set aside so long as one of the two alternative bases for conviction is supported by substantial evidence[.]" ( emphasis, internal quotation marks, and citation omitted)).

**II.      The District Court Did Not Err in Denying Defendant's Motion to Suppress**

{20} Defendant argues that the district court erred in denying his motion to suppress because Lieutenant Jacquez lacked reasonable suspicion to stop Defendant's vehicle. "The Fourth Amendment to the United States Constitution prohibits unreasonable

15

searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *State v. Neal*, 2007-NMSC-043, ¶ 18, 142 N.M. 176, 164 P.3d 57 (internal quotation marks and citation omitted). In appropriate circumstances, a police officer may "approach a person for purposes of investigating possible criminal behavior" even if there is insufficient probable cause to make an arrest. *State v. Contreras*, 2003-NMCA-129, ¶ 5, 134 N.M. 503, 79 P.3d 1111 (internal quotation marks and citation omitted). Looking at the totality of the circumstances, the officer must have a reasonable suspicion that the person is or is about to be "engaged in criminal activity." *Id.* "Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *State v. Flores*, 1996-NMCA-059, ¶ 7, 122 N.M. 84, 920 P.2d 1038. An anonymous tip "must be suitably corroborated or exhibit sufficient indicia of reliability to provide the police reasonable suspicion to make an investigatory stop." *Contreras*, 2003-NMCA-129, ¶ 5. We review de novo whether Lieutenant Jacquez's conduct was objectively reasonable. *See Neal*, 2007-NMSC-043, ¶ 19.

{21} In *Contreras*, this Court reversed the district court's order suppressing evidence obtained following a traffic stop of the defendant. 2003-NMCA-129, ¶ 1. The defendant was stopped and subsequently arrested and charged with aggravated

16

driving while under the influence following an anonymous call to police. *Id.* ¶ 2. The caller informed dispatch of a possible drunk driver and described the vehicle as a gray van, towing a red Geo, and driving erratically. *Id.* Dispatch informed police who subsequently stopped the defendant's vehicle that matched the description. *Id.* This Court reasoned that, under the totality of the circumstances, the tip from the caller "contained sufficient information and was sufficiently reliable to provide the deputies with reasonable suspicion that a crime was being or was about to be committed" and that "the possible danger to public safety was sufficient for the deputies to conduct the . . . stop." *Id.* ¶ 7. This Court further stated that the facts supported the inference that "the anonymous caller was a reliable concerned motorist; the information given was detailed enough for the deputies to find the vehicle in question and confirm the description; and the caller was an apparent eyewitness[.]" *Id.* ¶ 21.

{22}     We conclude there were sufficient facts to provide Lieutenant Jacquez with reasonable suspicion that a crime was being or about to be committed. On March 17, 2012, a concerned citizen called the central dispatch of the Deming Police Department to report that a big gray or silver vehicle, with a male driver, was unable to control his lanes, was driving recklessly, and the caller believed the driver was possibly under the influence. At the hearing on the motion to suppress, Lieutenant Jacquez testified that dispatch sent out the details of the call, advising all units of a

17

possible drunk driver in a residential area, heading northbound on Copper Street. Lieutenant Jacquez was two blocks away from the area, and when he entered Florida Street, he saw Defendant's vehicle, which matched the description sent out by dispatch. Lieutenant Jacquez activated his emergency equipment, and Defendant pulled his vehicle over after proceeding another block or two. Lieutenant Jacquez approached the vehicle, informed Defendant of the reason for the stop, and proceeded with his investigation.

{23}     As in *Contreras*, the anonymous tip given to the police in this case provided sufficient information describing the color and model of the vehicle, its location and direction on a specific street so that Lieutenant Jacquez could reliably identify Defendant's vehicle moments later. Under the circumstances, the caller's tip met the criteria discussed in *Contreras* for determining that the anonymous citizen tip was sufficiently reliable. *See id.* ¶ 10 ("In New Mexico, a citizen-informant is regarded as more reliable than a police informant or a crime-stoppers informant[.]"). Although Lieutenant Jacquez did not testify that he observed Defendant driving erratically, it is sufficient that the caller was an eyewitness to Defendant's reckless driving. *See id.* (stating that a tip is more reliable if it is apparent the informant witnessed or observed the details personally). Finally, the possible danger to the public of a drunk driver presents an exigent circumstance that can tip the balance in favor of a stop. *See id.*

18

¶ 13 ("The reasonableness of seizures that are less intrusive than a traditional arrest depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law [enforcement] officers." (internal quotation marks and citation omitted)). Under the totality of the circumstances, the stop of Defendant's vehicle was reasonable as there are articulable facts that Defendant was engaged in criminal behavior by driving while under the influence. *See id.* ¶ 5 (stating that the facts surrounding a tip are viewed in light of the totality of the circumstances). As a result, the district court did not error in denying Defendant' motion to suppress.

## III. There is Sufficient Evidence to Support Defendant's Conviction for Possession of Methamphetamine

{24} Defendant argues that the evidence was not sufficient to support his conviction for possession of methamphetamine and "that no rational trier of fact could have found him guilty beyond a reasonable doubt." "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). Viewing the evidence in the light most favorable to the verdict, the appellate courts "indulg[e] in all reasonable inferences and resolv[e] all conflicts in the evidence in favor of the

19

verdict." *Id.* (internal quotation marks and citation omitted). The appellate courts do "not substitute [their] judgment for that of the fact[-]finder, nor [do they] reweigh the evidence." *State v. Smith*, 2001-NMSC-004, ¶ 7, 130 N.M. 117, 19 P.3d 254.

{25}     To find Defendant guilty of possession of methamphetamine, the jury was instructed that: "the [S]tate must prove to your satisfaction beyond a reasonable doubt [that]: 1. [D]efendant had methamphetamine in his possession. . . . 2. [D]efendant knew it was methamphetamine or believed it to be methamphetamine or believed it to be some drug or other substance the possession of which is regulated or prohibited by law[.] . . . 3. This happened in New Mexico on or about the 17th day of March, 2012."

{26}     After placing Defendant under arrest, Lieutenant Jacquez found ninety-seven empty small baggies with red lips printed on them and the straw with a burnt end in Defendant's left pocket. Lieutenant Jacquez testified that the small baggies and the straw with a burnt end are commonly used to package methamphetamine. In Defendant's right pocket, Lieutenant Jacquez found another small plastic bag with a white powdery substance, later identified as methamphetamine. After the owner of the vehicle arrived and consented to a search of the vehicle, officers found three additional baggies imprinted with the same red lips in a cigarette pack under the armrest. Each baggie contained what was identified in a field test as

20

methamphetamine, later confirmed by the forensic crime expert as a "weighable amount" of methamphetamine. Defendant testified and argues on appeal that the cigarette pack did not belong to him. However, "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *Duran*, 2006-NMSC-035, ¶ 5 (internal quotation marks and citation omitted). Furthermore, Defendant does not contest that the methamphetamine found on his person was also in his possession or that he did not know that the substance on his person was methamphetamine. As a result, there was sufficient evidence for the jury to find Defendant guilty beyond a reasonable doubt of possession of methamphetamine.

**IV. Defendant's Right to a Speedy Trial Was Not Violated**

{27}     The Sixth Amendment to the United States Constitution and Article II, Section 14 of the New Mexico Constitution guarantees the right to a speedy trial. *See State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387. To determine whether the right has been violated, we examine four factors: "(1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant[.]" *Id.* ¶ 13 (internal quotation marks and citation omitted). "[T]he factors have no talismanic qualities, and none of them are a necessary or sufficient condition to the finding of a violation of the right of speedy trial." *State v.*

21

*Spearman*, 2012-NMSC-023, ¶ 18, 283 P.3d 272 (alteration, internal quotation marks, and citation omitted). This Court examines the complexity of the case to determine whether a delay triggers a presumption of prejudice. *See Garza*, 2009-NMSC-038, ¶ 23. "[A] 'presumptively prejudicial' length of delay is simply a triggering mechanism, requiring further inquiry into the [other *Barker v. Wingo*, 407 U.S. 514, 530 (1972)] factors." *Garza*, 2009-NMSC-038, ¶ 21. When specifically analyzing the four factors, we review the weight attributed to each factor de novo but defer to the district court's findings of fact. *Id.* ¶¶ 19, 24.

{28}     Here, Defendant's right to a speedy trial was not violated. First, assuming the Defendant's case was simple, the ten-month delay between Defendant's arrest in March 2012 and trial in January 2013 does not meet the minimum length of delay to be considered presumptively prejudicial. *See id.* ¶ 41 (stating that the minimum length of delay in a simple case to be considered "presumptively prejudicial" is one year); *see also State v. Maddox*, 2008-NMSC-062, ¶ 10, 145 N.M. 242, 195 P.3d 1254 (indicating that the right to a speedy trial attaches "when the defendant becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer" (internal quotation marks and citation omitted)), *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 46-48. Although the "presumptively prejudicial" guidelines set by the appellate courts are not bright-line rules, Defendant

does not present an argument that would otherwise require us to independently analyze the four speedy trial factors. *See Garza*, 2009-NMSC-038, ¶ 49 ("The situation may arise where a defendant alerts the district court to the possibility of prejudice to his defense and the need for increased speed in bringing the case to trial, i.e., the impending death of a key witness. Where that possibility is realized and the defendant suffers actual prejudice as a result of delay, these guidelines will not preclude the defendant from bringing a motion for a speedy trial violation though the delay may be less than one year."); *see also State v. Smith*, 2016-NMSC-007, ¶ 59, 367 P.3d 420 (noting that "[the d]efendant must still show particularized prejudice cognizable under his constitutional right to a speedy trial and demonstrate that, on the whole, the *Barker* factors weigh in his favor").

{29}     Defendant only asserts that he was prejudiced by being in custody while awaiting trial, but makes no argument as to how his case was prejudiced in any way due to his incarceration. *See State v. Coffin*, 1999-NMSC-038, ¶ 69, 128 N.M. 192, 991 P.2d 477 (recognizing that even when the delay slightly exceeds the presumptively prejudicial threshold, the typical hardship and anxiety resulting from criminal charges and pretrial incarceration only warrants enough prejudice to weigh lightly in the defendant's favor). As a result, we hold that Defendant has failed to present a viable argument that his right to a speedy trial was violated.

## CONCLUSION

{30} For the foregoing reasons, we reverse and vacate Defendant's convictions for possession of drug paraphernalia that was based upon the small baggies in his possession and affirm the conviction for possession of drug paraphernalia based upon the red straw with a burnt end. We also uphold all of Defendant's remaining convictions. We remand this case to the district court for resentencing consistent with this opinion.

{31} **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**MICHAEL E. VIGIL, Judge**

24