This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40696

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**WALTER HARVEY,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**R. David Pederson, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Leland M. Churan, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**ATTREP, Chief Judge.**

**{1}**     The State appeals the district court's order granting Defendant Walter Harvey's motion to suppress evidence of driving while intoxicated (DWI) obtained during a traffic stop. The district court ruled that the detaining officer lacked reasonable suspicion to stop Defendant's vehicle, which matched the description of an "attempt to locate" (ATL) notification broadcast by dispatch regarding a vehicle observed driving "all over the road." We reverse.

**BACKGROUND**

**{2}** The facts are taken from the district court's written findings, as well as the uncontradicted testimony of a New Mexico State Police Officer (the Officer) at the hearing on Defendant's motion to suppress.[1] While on patrol, the Officer heard an ATL dispatched over his police radio relaying that an older model, silver sedan with a New Mexico chile variant license plate was driving "all over the road" while traveling south on State Road 602 at Muñoz Overpass in Gallup. The Officer, who was in the vicinity of the vehicle's reported location when he heard the ATL, began driving north on State Road 602 to intercept the vehicle. It was around 12:30 a.m. at the time and the Officer testified that there was not much traffic on the road. Shortly after hearing the ATL, the Officer saw an older model, silver sedan—Defendant's car—driving south so the Officer made a U-turn to follow Defendant. The district court found that "there were only two vehicles on [State Road 602] going [south]: [a] blue pick-up truck and [Defendant's] little car." While passing the pick-up truck, which was traveling between his vehicle and Defendant's, the Officer testified that he saw Defendant's car "jerk to the right" in a way that he does not "see every day."[2] The Officer testified that he did not otherwise observe Defendant's car driving erratically. After passing the blue pick-up truck, the Officer saw that Defendant's car had a chile variant license plate. At that point, the Officer activated his emergency lights and stopped Defendant. The Officer explained to Defendant, "The reason for the stop today is people calling in [that] you're all over the road."

**{3}** Defendant filed a motion to suppress evidence of DWI found after the traffic stop, arguing, in relevant part, that the Officer lacked reasonable suspicion to justify the stop and that he was not acting as a community caretaker at the time he pulled Defendant over. The State argued below, as it does on appeal, that the Officer was acting as a

1The district court in this case did not indicate that it doubted the Officer's testimony and no contrary evidence was presented at the hearing. Indeed, at the end of the hearing, the district court praised the Officer for his candor on the witness stand. We accordingly presume the district court credited the Officer's uncontradicted testimony. *See State v. Gonzales*, 1999-NMCA-027, ¶ 17, 126 N.M. 742, 975 P.2d 355 (providing that a district court must "provide an explanation in the record if it disbelieve[s]" a witness's uncontradicted testimony, and absent such an explanation, appellate courts presume the district court believed such testimony); *State v. Simpson*, 2016-NMCA-070, ¶ 8, 388 P.3d 277 ("Absent a contrary indication in the record, we presume the [district] court believed all uncontradicted evidence." (internal quotation marks and citation omitted)).

2Although the district court found that the Officer's dash camera video did "not show any weaving or other aberrant driving by Defendant prior to the traffic stop, let alone anything like driving 'all over the road,'" this finding does not contradict the Officer's testimony that he witnessed Defendant's car jerk. As the State explains, the Officer "could have simply had a different viewing angle [than the dash camera] as he passed the pick-up truck." *Cf. State v. Martinez*, 2018-NMSC-007, ¶ 17, 410 P.3d 186 (observing that "[d]ue to poor lighting and the angle of the dash-cam," the video did not show whether the defendant stopped his vehicle in the intersection or behind the line, and thus "the dash-cam video did not squarely contradict the officer's testimony" that the defendant's vehicle stopped in the intersection). But even if we were to disregard the Officer's testimony on this point, this would not alter our reasonable suspicion analysis for the reasons discussed below. *See State v. Contreras*, 2003-NMCA-129, ¶ 9, 134 N.M. 503, 79 P.3d 1111 (providing that "in the context of a totality of the circumstances analysis, . . . law enforcement officers can make an investigatory stop of a vehicle based on a contemporaneous tip of erratic driving that accurately describes a given vehicle, even if the officers did not witness the erratic driving").

community caretaker when he stopped Defendant's vehicle,[3] or, alternatively, that he had reasonable suspicion to stop the vehicle. The district court found that the Officer stopped Defendant pursuant to an ATL about a vehicle "driving 'all over the road' southbound on [State Road] 602" and that the ATL "arose from an anonymous citizen tip[,] which described the vehicle as a silver sedan with a 'Chile' license plate." The district court concluded that the Officer "lacked sufficient reasonable suspicion to identify Defendant's car as the one mentioned in the dispatch." The court accordingly granted Defendant's motion to suppress the DWI evidence. The State appeals, and we reverse.

## DISCUSSION

**{4}** A district court's decision to grant a motion to suppress is a mixed question of law and fact. *State v. Contreras*, 2003-NMCA-129, ¶ 4, 134 N.M. 503, 79 P.3d 1111. We "defer to the district court with respect to findings of historical fact so long as they are supported by substantial evidence," *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856, but review the district court's application of the law de novo, *see Contreras*, 2003-NMCA-129, ¶ 4. *See State v. Yazzie*, 2016-NMSC-026, ¶ 15, 376 P.3d 858.

**{5}** "The Fourth Amendment [to the United States Constitution] requires that, under the totality of the circumstances, the detaining officer's suspicion be particularized to the stopped individual and also objectively reasonable." *State v. Espinoza*, ___-NMSC-___, ¶ 18, ___ P.3d ___ (S-1-SC-38642, Oct. 30, 2023). The parties agree that, under the facts presented in this case, whether reasonable suspicion under the Fourth Amendment exists is governed by the approach articulated by this Court in *Contreras*.[4] *See* 2003-NMCA-129, ¶¶ 7-8, 21-22. *Contreras* examined three factors to determine whether an anonymous tip about dangerous or erratic driving alone can supply the reasonable suspicion needed to conduct an investigatory stop: (1) whether the tip contained sufficient information to identify the suspect vehicle, *id.* ¶ 9; (2) whether the

---

3The district court did not address the State's community caretaker argument in its order granting Defendant's suppression motion. During the hearing, however, the district court stated that "all traffic stops have to be based upon" reasonable suspicion. To the extent the district court rejected the State's community caretaker argument on this basis, it erred. *See, e.g., State v. Ryon*, 2005-NMSC-005, ¶ 20, 137 N.M. 174, 108 P.3d 1032 ("When police act as community caretakers, . . . the existence of reasonable suspicion or grounds for probable cause are not appropriate inquiries."), *holding modified on other grounds by State v. Yazzie*, 2019-NMSC-008, ¶ 23, 437 P.3d 182.

4Although Defendant suggests Article II, Section 10 of the New Mexico Constitution may require a more stringent reasonable suspicion standard than the Fourth Amendment standard discussed in *Contreras*, he does not present a developed argument for why we should construe Article II, Section 10 as providing greater protection than the Fourth Amendment in this context, as required by *State v. Gomez*, 1997-NMSC-006, ¶ 19, 122 N.M. 777, 932 P.2d 1 (providing that state courts "may diverge from federal precedent for three reasons: a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics"). Because Defendant fails to "analyze any of [the three] reasons for diverging from federal precedent," we decline to further consider this issue. *See State v. Randy J.*, 2011-NMCA-105, ¶ 30, 150 N.M. 683, 265 P.3d 734 (declining to decide an undeveloped state constitutional argument). *See generally Yazzie*, 2016-NMSC-026, ¶ 38 ("We have defined and applied the reasonable suspicion standard in the same way when conducting both Fourth Amendment and Article II, Section 10 analyses.").

tip was sufficiently reliable under the circumstances, *id.* ¶ 10; and (3) the balance of the possible threat of drunk driving to the safety of the public with the defendant's right to be free from unreasonable seizure, *id.* ¶ 13. In conducting our analysis of the *Contreras* factors, we bear in mind that "[t]he touchstone of our reasonable suspicion analysis is that we examine the totality of the circumstances and accordingly avoid reweighing individual factors in isolation." *Espinoza*, ___-NMSC-___, ¶ 18.

**{6}** The district court, in granting Defendant's suppression motion, focused on the first *Contreras* factor—concluding that the Officer "lacked sufficient reasonable suspicion to identify Defendant's car as the one mentioned in the dispatch." It is not disputed that Defendant's vehicle matched the ATL's description. Instead, Defendant contends "the tip in this case was not as specific as the tip in *Contreras*." We disagree with Defendant's suggestion, and the district court's apparent conclusion, that the tip in this case was too vague to support reasonable suspicion under the first *Contreras* factor.

**{7}** Although the vehicle in this case was not as visually distinct as the one in *Contreras*, *see* 2003-NMCA-129, ¶ 2 ("a grey van, towing a red Geo"), the tip here provided a number of identifying features—many of which were absent in *Contreras*. The tip in this case included the general age of the vehicle (older model), the color of the vehicle (silver), the type of vehicle (sedan), the type of license plate (chile), the location of the vehicle (Muñoz Overpass on State Road 602), and its direction of travel (southbound). These details—coupled with the fact that it was after midnight and there were only two vehicles on State Road 602 traveling south—provided the Officer with sufficient information to identify Defendant's vehicle as the one described in the ATL. *See id.* ¶ 9 (reversing the district court's grant of a motion to suppress where, "[t]hough the facts here are few, they were sufficient for the deputies to identify the correct vehicle and make the stop"); *see also State v. Tidey*, 2018-NMCA-014, ¶¶ 2, 22-23, 409 P.3d 1019 (concluding reasonable suspicion existed where an anonymous citizen reported that the driver of a gray Ford Crown Victoria was driving erratically, and the tip included the vehicle's location and direction of travel); *State v. Lovato*, 1991-NMCA-083, ¶¶ 11-14, 112 N.M. 517, 817 P.2d 251 (concluding that there was reasonable suspicion to stop a vehicle that "met the general description" of an ATL a vehicle involved in a drive-by shooting, given the vehicle's temporal and geographic proximity to the location of the reported shooting; the lack of other vehicles driving in the area; and the time of the reported shooting (around midnight)). The district court accordingly erred in determining that the tip lacked sufficient information "to identify Defendant's car as the one mentioned in the dispatch."

**{8}** Having concluded that the district court's analysis of the first *Contreras* factor was erroneous, we turn next to the second and third *Contreras* factors—neither of which the district court appears to have considered—to determine whether reasonable suspicion existed under the totality of the circumstances. *See State v. Jason F.*, 1998-NMSC-010, ¶ 22, 125 N.M. 111, 957 P.2d 1145 (addressing an issue unnecessary to the appellate disposition "[i]n the interests of judicial efficiency and economy" because it

was likely to arise on remand); *State v. Soto*, 2001-NMCA-098, ¶ 11, 131 N.M. 299, 35 P.3d 304 (same).

**{9}** As for the second factor, we consider whether the tip in this case was "[s]ufficiently [r]eliable [u]nder the [c]ircumstances." *Contreras*, 2003-NMCA-129, ¶ 10. The district court found that the informant in this case was "an anonymous citizen." "[A] citizen-informant is regarded as more reliable than a police informant or a crime-stoppers informant," *id.*, and the reliability of a citizen-informant tip is further bolstered if it is apparent from the record that the informant was an eyewitness to the erratic or dangerous driving, *see id.* ¶ 12 ("Courts acknowledge that a tip is more reliable if it is apparent that the informant observed the details personally."). Although, as Defendant argues, "[m]erely asserting that an anonymous informant is a 'concerned citizen' [does not] automatically bestow[] credibility," *see State v. Haidle*, 2012-NMSC-033, ¶ 20, 285 P.3d 668, that is not the situation before us. Here, the tip's details about the vehicle's appearance, location, direction of travel, and erratic driving support an inference that the anonymous citizen was "an eyewitness, . . . lending credibility to the anonymous claim." *See Contreras*, 2003-NMCA-129, ¶ 12 (citing cases for the proposition that "a specific description of the car, its location, direction, and prior movements reasonably support a conclusion that [the] caller had personally observed the vehicle"). This is in contrast with *Haidle*, relied on by Defendant, in which an affidavit "merely conclude[d] that two sources [we]re concerned citizens, with no further explanation." 2012-NMSC-033, ¶ 20. Thus, as in *Contreras*, "[t]he fact that the caller was a concerned citizen reporting [their] eyewitness account of erratic and possibly drunk driving is a factor that [the Officer] could consider in evaluating the totality of the circumstances." *See* 2003-NMCA-129, ¶ 12; *see also Tidey*, 2018-NMCA-014, ¶ 23 (concluding that an anonymous tip was sufficiently reliable because it met *Contreras*'s criteria for reliability).

**{10}** Finally, as for the third *Contreras* factor, "we must balance the possible threat of drunk driving to the safety of the public with Defendant's right to be free from unreasonable seizure" "in determining whether the totality of circumstances gave [the Officer] a reasonable suspicion to stop Defendant." *See Contreras*, 2003-NMCA-129, ¶ 13; *see also Tidey*, 2018-NMCA-014, ¶ 23 (considering the "exigent circumstance" and danger presented by a drunk driver as a factor weighing in favor of a stop's validity); *State v. Salazar*, 2019-NMCA-021, ¶ 18, 458 P.3d 546 (same); *State v. Simpson*, 2016-NMCA-070, ¶ 19, 388 P.3d 277 (same). Here, the district court determined that a reasonable officer hearing the ATL would have believed the driver of the vehicle was drunk. *See Yazzie*, 2016-NMSC-026, ¶ 20 ("In determining whether an officer's suspicion was reasonable, we employ an objective assessment of the officer's actions."). We agree and conclude that "the exigency of the possible threat to public safety that a drunk driver poses, New Mexico's grave concern about the dangers of drunk drivers, and the minimal intrusion of a brief investigatory stop tip the balance in favor" of the validity of the stop. *Contreras*, 2003-NMCA-129, ¶ 21.

**CONCLUSION**

**{11}**  Under the totality of the circumstances, we conclude the Officer had reasonable suspicion to stop Defendant's vehicle because (1) the ATL provided sufficient information to identify the vehicle, *see id.* ¶ 9; (2) the anonymous citizen-informant tip was reliable, *see id.* ¶¶ 10-12; and (3) the possible danger of drunk driving presented an exigent circumstance that tipped the balance in favor of the stop, *see id.* ¶¶ 13-20. We accordingly reverse the district court's suppression order and remand to the district court for further proceedings consistent with this opinion.

**{12}   IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**SHAMMARA H. HENDERSON, Judge**